**Ex Parte Thomas Christopher RETZLAFF, Applicant.**

**No. 74,772.**

Court of Criminal Appeals of Texas.

May 19, 2004.

Thomas Christopher Retzlaff, pro se.

Jeffrey L. Van Horn, Asst. State Atty., Matthew Paul, State's Atty., Austin, for State.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, JOHNSON and HOLCOMB, JJ., joined.

We withdraw our previous opinion and substitute this opinion. The constitutional issue presented in this writ application is whether notice that a person will be reviewed for release on mandatory supervision at some unspecified time "before [his] projected release date" constitutes timely notice consistent with due process. We hold that it does not.

## I.

Applicant was convicted of Possession of a Weapon in a Prohibited Place [1] in March 1998 and sentenced to eight years in prison. He was eligible for release on discretionary mandatory supervision on April 19, 2001. On December 20, 2000, a parole panel prospectively denied him release on mandatory supervision. Applicant claims that he was not sent notice that a parole panel would be considering whether to re-

lease him at that time. The same thing happened in 2001. He was told that a parole panel would review him for release in December, 2001, but a parole panel then voted to deny his mandatory supervision release on November 13, 2001—two weeks before the earliest date he was scheduled to be reviewed. Applicant filed a writ of habeas corpus, alleging that he had been deprived of due process because a parole panel reviewed his case before the month scheduled.[2]

On August 21, 2002, this Court agreed with applicant and granted him what we thought was the appropriate relief—another hearing with sufficient advance notice of its timing so that he would have an opportunity to submit relevant information to the Board of Pardons and Paroles before it made a decision.[3] Ten months later applicant filed another writ complaining that "the Board pulled the same stunt as before." This time, it informed applicant on March 7, 2002, that it would review him for release on mandatory supervision at some unspecified future date, but that he should submit any additional written materials that he would like the Board to review "as soon as possible."[4] That unspecified date turned out to be some ten months later, on

---

1. TEX. PEN.CODE § 46.03.

2. See Ex parte Shook, 59 S.W.3d 174 (Tex. Crim.App.2001). In that case, we explained that:

   when the Board gives the inmate notice of a *specific date* on which the hearing is scheduled to take place, the inmate is entitled to rely on that information and accordingly has until that date to submit relevant information on his behalf. If the Board holds the hearing for such consideration on a date earlier than the specific date the inmate has been notified that the hearing will take place, then the inmate has been misled by the notice and denied the full opportunity he was told he would have in order to submit relevant information to the Board.

*Id.* at 176.

3. Specifically, we ordered the Board to "consider Applicant for mandatory release and provide him with timely notice that such consideration will occur." *Ex parte Retzlaff*, No. 74,412, slip op. at 2 (Tex.Crim.App.2002) (not designated for publication). We do not have any record that the Board provided applicant with an additional review and timely notice of that review based upon our order.

4. This notice is a standardized form which states, in pertinent part: "Before your projected release date, the Board will review your file and all available records to determine if you will be released." This document does not inform the inmate of his projected release date.

January 16, 2003, but applicant was not informed of that date until he received a denial letter afterwards.

Applicant now claims that he "was denied a meaningful opportunity to be heard when the Parole Board conducted a hearing in [his] case on a date for which [he] had not been given notice." He argues that the "ambiguous, vague" notice that he had received on March 7, 2002, was "was just as defective" as the notice he had received in 2001, and that the Board therefore violated his right to due process under the Fifth and Fourteenth Amendments.

## II.

From 1977 until 1987, an eligible inmate whose "actual calendar time" plus "accrued good conduct time" equaled the term of his sentence was *automatically* released on mandatory supervision and treated as if he were on parole.[5] "[M]andatory supervision was originally created to ensure parole custody for all prisoners in order to prevent recidivism."[6] It was intended to provide the inmate with a supervised transition from prison to the local community and to ensure that parole officers would provide the releasee with guidance, control, assistance, and support. Beginning in 1987, amendments to that statute made some inmates, those convicted of especially serious offenses and those who had used a deadly weapon in committing their crime, ineligible for release on mandatory supervision.[7] Those inmates were either released on regular parole or required to serve their entire sentence. Nonetheless, some of those who were required to be released on mandatory supervision were not rehabilitated and still constituted a danger to the public.

■ Therefore, in 1995, the Texas Legislature amended the mandatory supervision statute to permit a parole panel to exercise some discretion in deciding whether a person who was eligible for release on mandatory supervision should, nonetheless, be kept in custody.[8] Under the revised Government Code section, "[a]n inmate may not be released to mandatory supervision if a parole panel determines that:

(1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and

(2) the inmate's release would endanger the public."[9]

This statute is a "failsafe" mechanism to protect society from the inappropriate release of those who are not truly rehabilitated and who would constitute a present danger to the public. Under the current provision, an inmate who is eligible for release on mandatory supervision will be released *unless* the parole panel makes these two specific findings. Given the wording of the statute, an eligible inmate has a vested, statutory entitlement to release on mandatory supervision, but it is a defeasible interest—one that may be de-

---

5. *See* former TEX. CODE CRIM. PROC. art. 42.18, § 8(c).

6. H.B. 1433 Comm. Report (Amended), 74th Leg. (April 11, 1995).

7. TEX. GOV'T CODE §§ 508.147 & 508.149.

8. *See* H.B. 1433 Comm. Report (Amended), 74th Leg. (April 11, 1995) ("[t]he purpose of this Act is to give the Pardons and Parole Board a lever to close the 'automatic open door' of mandatory supervision.... This legislation allows for discretionary release by the Pardons and Parole Board for all inmates, while still providing for the original intent of the legislation, supervised release, in most instances").

9. TEX. GOV'T CODE § 508.149(b).

feated, but only if the parole panel makes these findings in its review.

■ We must assess the gravity of the interests at stake in this review—the inmate's interest in liberty and society's interest in safety—in determining what process is due under the federal constitution. The parole panel has great discretion in the regular parole review process as an inmate does not have a statutorily vested liberty interest in being released on parole.[10] Under the Texas Government Code, however, a parole panel has much less discretion in denying an inmate release on mandatory supervision. The statute vests a liberty interest in the eligible inmate, and the statutory presumption is slanted toward release.[11] The parole panel must justify non-release.

■ The two statutory findings that justify non-release are predictive judgments based upon discrete factual conclusions and subjective appraisals. Necessarily, then, they are highly contingent upon accurate, up-to-date information and explanation. The due process goal in any parole board review is to "minimize the risk of erroneous decisions."[12] Thus, "the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error."[13]

Timely notice to the inmate that he will be reviewed for mandatory release gives him the opportunity to provide written input, marshal evidence of his custodial behavior, clarify adverse material in his file, provide letters, references, and information concerning possible employment or housing. To be effective, this notice must be given sufficiently in advance of the mandatory supervision release review date to allow the inmate to prepare and submit any such information. On the other hand, material submitted too early may be out-of-date or superceded by other information or events by the time the review is actually undertaken.[14] Timely notice, which provides sufficient opportunity to submit relevant, up-to-date information by affected parties, is a rudiment of due process, and it reassures both the individual and society that "fair dealing rather than caprice will govern the affairs of men."[15]

In *Greenholtz*, the Supreme Court addressed, *inter alia*, the notice required by the Due Process Clause of the Fourteenth Amendment in the context of parole hearings, a more discretionary decisionmaking hearing than that under the Texas mandatory supervision statute. In that context, the Supreme Court noted that the Nebras-

---

10. *See Ex parte Geiken,* 28 S.W.3d 553, 558 (Tex.Crim.App.2000) (noting that while the parole system in Texas creates no presumption of release on parole, the mandatory supervision statute does).

11. *Id.* ("[u]nlike parole, which requires that the Board vote in favor of release, the mandatory supervision statute requires that the offender be released absent Board action to the contrary").

12. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 13, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979) (discussing what process is constitutionally due for state parole board hearings).

13. *Id.*

14. *See Geiken,* 28 S.W.3d at 560 (noting that "[t]he option of providing the Board with information supportive of release is of little practical use if the inmate is unaware that such a review will be taking place"); *see also Ex parte Shook,* 59 S.W.3d 174, 175 (Tex. Crim.App.2001) (reiterating prior holding that constitutional due process requires Board to give inmates timely advance notice of their review for release on mandatory supervision).

15. *Morrissey v. Brewer,* 408 U.S. 471, 499, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (Douglas, J., dissenting).

ka parole board provided constitutionally adequate notice because it

> informs the inmate in advance of the month during which the hearing will be held, thereby allowing time to secure letters or statements; on the day of the hearing it posts notice of the exact time. There is no claim that either the timing of the notice or its substance seriously prejudices the inmate's ability to prepare adequately for the hearing.[16]

It therefore reversed the court of appeals' decision which had required the Nebraska parole board to give the inmate advance notice of the exact time of the hearing, as well as a list of factors that the board would consider. The Supreme Court found this unnecessary as a component of due process. The Court, in *Greenholtz*, adopted a functional test concerning the adequacy of notice: the inmate must show not only deficiencies in the notice, but how those deficiencies adversely affect him.[17] In that case, the Nebraska inmates failed to show that they would be adversely affected in their ability to submit timely supportive materials because the parole board gave them advance notice only of the month of their parole hearing, not the exact time and date.

■ Given an inmate's vested liberty interest set out in the mandatory supervision statute, we conclude that written notice that an inmate will be reviewed at some unspecified time in the future, coupled with a request that he submit relevant materials "as soon as possible," is constitutionally deficient notice. It fails to specify any relevant time frame, and it is so vague that it poses an unacceptable risk of adversely affecting an inmate. With this type of notice, an inmate could be reviewed

the day after the notice was sent and therefore his materials could not be submitted in time, or he could be reviewed in ten to twelve months, in which case his materials may be entirely out-of-date. This notice is, from a constitutional due process standpoint, the same as no notice at all.

■ Following the Supreme Court's reasoning in *Greenholtz*, we hold that, in the normal case,[18] an inmate is entitled to notice of the specific month and year in which he will be reviewed for release on mandatory supervision. We also hold that he must be given at least thirty days advance notice that he will be reviewed in the specified month so that he has a sufficient opportunity to submit materials on his behalf.

Applicant has also alleged harm. He states:

> In the case at hand, applicant was harmed because had he known that his parole hearing was going to be conducted on January 16, 2003, he would have used all of the time right up to that date to have letters of support submitted by his wife and children and friends; thus, giving the Board the chance to consider this relevant and material information prior to its making a decision—this is the very same set of circumstances and allegations that were made in the prior Writ application that the Court of Criminal Appeals granted!

Although the generic notice that the Board gave applicant in March, 2002, was sufficient to put him on notice that he would be reviewed some day, our order of August 21, 2002, surely led him to believe that he would receive "timely notice" before his next review.

---

16. *Greenholtz,* 442 U.S. at 14 n. 6, 99 S.Ct. 2100.

17. *Id.*

18. We recognize that there may be logistical peculiarities in a particular case—or small class of cases—that could make designation of a specific month for review impractical.

Given the repeated failures to provide adequate and timely notice to this particular applicant,[19] we conclude that applicant is entitled to the specific habeas corpus relief that he has requested—a new review "as soon as possible." Because the mandatory supervision statute requires release unless a parole panel makes specific findings, we find that Thomas Christopher Retzlaff's continued incarceration is illegal and unconstitutional unless, within sixty days, a parole panel has given him timely notice of a review to be held before the fifty-ninth day and has provided him at least thirty days to submit whatever explanatory material he wishes the panel to consider. Under our statute, the onus is on a parole panel to invoke the review process and make its findings, not on the eligible inmate to request a review. Without a parole panel's two statutory findings, made only after timely due process notice to the inmate giving him an opportunity to submit materials, the Texas Department of Criminal Justice—CID must release an eligible inmate to mandatory supervision.

Copies of this opinion will be delivered to the Texas Department of Criminal Justice–CID and to the Texas Board of Pardons and Paroles.

KELLER, P.J., filed a dissenting opinion in which KEASLER, J., joined.

HERVEY, J., filed a dissenting opinion in which KEASLER, J., joined.

KELLER, P.J., dissenting.

The State's motion for rehearing highlights several problems with the Court's original opinion: (1) TDCJ, not the parole board, releases offenders, (2) TDCJ, not the parole board, notifies offenders of their review date, (3) it is not always practical to specify a particular month or date for review because release dates sometimes fluctuate, and (4) thirty days notice is not always practical because some inmates have already approached the release date or will do so in less than thirty days. The Court's revised opinion remedies the first concern, and addresses but does not entirely resolve the third concern. It does not address the second and fourth concerns.

According to the pleadings filed on rehearing, the Board of Pardons and Paroles voted on over 18,000 discretionary mandatory supervision cases during the last fiscal year. The determinations are made by no more than eighteen individuals. And there are thousands of other parole-related decisions made each year by the Board. Inmates are currently given notice about nine months prior to a projected release or review date.[1] The parole board's practice is to conduct a review no sooner than four months prior to the projected release or review date. It appears to me that this procedure meets due process standards under both this Court's caselaw and that of the United States Supreme Court.

---

**19.** Section 508.149(d) of the Texas Government Code provides that a parole panel determination not to release an inmate on mandatory supervision is immune from administrative or judicial review, but it does provide the inmate with two further opportunities for re-review within the following two years. TEX. GOV'T CODE § 508.149(d). The wording of this provision indicates that, after three unsuccessful annual reviews, an inmate need not be reviewed again for release on mandatory supervision. This applicant's first two reviews were made without sufficient due process notice. For this, his last review, he is entitled to a "speedy and effectual" habeas remedy.

**1.** The Board of Pardons and Paroles is not a party to this case. Neither is TDCJ. Their first opportunity to provide relevant information was, thus, on rehearing by way of an amicus brief. Much of the information in the pleadings on rehearing is, for this reason, presented to the Court for the first time.

While the Supreme Court in *Greenholtz* stated that Nebraska satisfied due process by informing the inmate "in advance of the month during which the hearing will be held," it did not say that due process requires the parole board to specify the specific month review takes place or to give at least 30 days notice of the review.[2] The Supreme Court has said that "due process is flexible and calls for such procedural protections as the particular situation demands."[3] "The quantum and quality of process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error."[4] Notifying the prisoner nine months in advance and giving him at least five months time to respond sufficiently minimizes the risk of an erroneous decision. If the inmate has important information to offer, one would expect that he would take less than five months to submit such information. And, given the predictive and subjective nature of any decision regarding an inmate's suitability for release, it is highly unlikely that the basis of the Parole Board's decision would be seriously undermined by information obtained at the last minute.

Moreover, I continue to adhere to my position that, to be entitled to relief on a *Geiken*[5] lack of notice claim, the applicant must show that he has actually been denied a meaningful opportunity to be heard.[6] In this case, the applicant was given advance notice that he would be considered for mandatory supervision, and, if the affidavits attached to the State's motion for rehearing are believed, the applicant was not only afforded the opportunity to submit information in support of release but did in fact submit such information.

The considerations discussed above would be enough for me to urge the Court to reconsider the merits of the application, except that it now appears the applicant has been released to mandatory supervision. According to an April 23, 2004 affidavit of William W. Seigman, a parole panel approved applicant for mandatory supervision on April 21, 2004. So, both mine and the Court's concerns have become moot. It now makes little sense for the Court to fix its original opinion by issuing a revised opinion, when that revised opinion orders the parole board to do something it can no longer do—give advance notice of a mandatory release review when the inmate has already been released. Under the circumstances, we should withdraw our prior opinion and dismiss the application as moot.

HERVEY, J., dissenting.

This dissenting opinion is substituted for the prior dissenting opinion which is withdrawn. The Court has apparently decided that it will provide the extreme remedy of applicant's early release from prison (even though a parole panel has determined that this would endanger the public) if the parole panel does not meet the Court's extra-statutory and arbitrary deadline for reviewing applicant for mandatory supervision release after "timely notice" to applicant. All of this ignores the ultimate due process question and has the very real potential of putting the security of the public at risk. I must, therefore, respect-

---

**2.** *Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex,* 442 U.S. 1, 14 n. 6, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979).

**3.** *Id.* at 12, 99 S.Ct. 2100.

**4.** *Id.* at 13, 99 S.Ct. 2100.

**5.** *Ex parte Geiken,* 28 S.W.3d 553 (Tex.Crim. App.2000).

**6.** *Ex parte Shook,* 59 S.W.3d 174, 176–177 (Tex.Crim.App.2001).

fully dissent to this particular exercise of the judicial power.

Applicant has filed a habeas corpus application. The record reflects that applicant previously filed another habeas corpus application in which he claimed that a parole panel had not provided him with adequate notice that it would review him for mandatory supervision release. This Court disposed of this writ on August 21, 2002, when it issued an opinion deciding that applicant was denied a meaningful opportunity to be heard when the parole panel reviewed him for mandatory supervision release in November 2001. The parole panel had notified applicant that it would review him in December 2001. *Ex parte Retzlaff,* slip op. at 1–2 (Tex.Cr.App. No. 74,412, delivered August 21, 2002) (unpublished) (by reviewing applicant early, the Board denied applicant a meaningful opportunity to be heard): *see also Ex parte Shook,* 59 S.W.3d 174 (Tex.Cr.App. 2001). This Court's August 21, 2002, opinion ordered the parole panel to "consider Applicant for mandatory release and provide him with timely notice that such consideration will occur." *Id.*

Applicant filed this current habeas corpus application in June 2003. Applicant contends in this proceeding that a parole panel considered him for mandatory supervision in January 2003 without providing him with adequate notice that the parole panel would do so. The record in this habeas corpus proceeding reflects that on March 7, 2002, the parole panel notified applicant in writing that it would again consider applicant for mandatory supervision release at some unspecified future date. This written notice further stated

that if applicant wished to submit any additional information, he should do so "in writing as soon as possible to the TDCJ–Parole Division, P.O. Box 13401, Capitol, Station, Austin, TX 78711 OR to your Institutional Parole office." The record further reflects that on January 16, 2003, the parole panel denied applicant mandatory supervision release because, among other things, applicant's release would endanger the public and also because applicant committed a major disciplinary offense during the preceding six months. Applicant waited about six months (from January 2003 to June 2003) to file this application for habeas corpus.

Applicant contends that the parole panel did not provide him with adequate notice that it would review him for mandatory supervision release in January 2003. Applicant claims that the "ambiguous, vague" notice that applicant received on March 7, 2002, is the same as no notice at all and that the "[January 2003] hearing was just as defective as the old one [in November 2001] because the Board pulled the same stunt as before!!"

**DUE PROCESS**

In *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* the Supreme Court decided that Nebraska's "discretionary parole" statutory scheme (which is similar to Texas' mandatory supervision release statutory scheme) afforded all "the process that is due" by providing the inmate with an opportunity to be heard and informing the inmate of why he was denied "discretionary parole." *See Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 99 S.Ct. 2100, 2108, 60 L.Ed.2d 668 (1979).[1] But,

---

1. I generally agree with the Court's description of Texas' mandatory supervision release statutory scheme. In this case, the habeas record reflects that the parole panel made the necessary findings that makes applicant ineligible for mandatory supervision release. In addition, it would appear that Texas inmates have less of a "liberty" interest under the current statutory scheme than they did under the prior scheme since the prior scheme pro-

this Court decides that the parole panel violated applicant's federal constitutional due process rights because it should have provided applicant with better notice of the time it would review applicant for mandatory supervision release. But the due process issue is not necessarily whether applicant should have received better or perfect notice. The due process issue is whether the notice that applicant did receive provided applicant with an opportunity to be heard before the parole panel denied him mandatory supervision release. *See Greenholtz*, 99 S.Ct. at 2108.

The majority does not expressly hold that applicant was denied this opportunity to be heard. Instead, the Court speculates that the (March 7, 2002) notice that the applicant in this case received could deprive some future hypothetical applicant of an opportunity to be heard.[2] The Court further relies on applicant's allegation of "harm" that had he been given better notice, he "would have used all of the time right up to [January 16, 2003] to have letters of support submitted by his wife and children and friends." But, applicant has not shown that he had any (old or new) materials to submit. And, it is extremely doubtful that any unsubmitted materials

that applicant may have had would have helped applicant given the Board's determination that applicant is dangerous to the public—a determination that this applicant does not dispute.[3]

The situation presented in this proceeding is not like the situation described in our August 21, 2002, opinion where a parole panel notified applicant that it would consider him for mandatory supervision release in December 2001 but then considered him in November 2001. *See Retzlaff*, slip op. at 1–2. There, we expressly decided that applicant was denied an opportunity to be heard when the parole panel reviewed him early. *See id.* In this case, the parole panel did not review applicant early. The parole panel reviewed applicant within the time frame that it stated that it would review applicant in the March 7, 2002, notice. This notice also shows that applicant had an opportunity to submit any additional information to the parole panel in support of his claim for mandatory supervision release. This notice even stated that applicant should submit this information "as soon as possible." On this record, applicant has not shown that he was denied an opportunity to be heard.[4]

---

vided for "automatic" release and the current scheme does not. *See Greenholtz*, 99 S.Ct. at 2106–07 (describing how Nebraska's "discretionary parole" statutory scheme created a due process protected liberty interest in the expectation of parole).

2. For example, on page eight of its opinion, the Court states:
   With this type of notice, an inmate could be reviewed the day after the notice was sent and therefore his materials could not be submitted in time, or he could be reviewed in ten to twelve months, in which case his materials may be entirely out-of-date. This notice is, from a constitutional due process standpoint, the same as no notice at all.

3. In deciding that "an inmate is entitled to notice of the specific month and year in which he will be reviewed for release on

mandatory supervision," the Court's opinion reads too much into footnote six of *Greenholtz*. There, the Supreme Court noted that there was no claim that notifying an inmate of the month in which he would be reviewed for "discretionary parole" violated due process. *See Greenholtz*, 99 S.Ct. at 2107 n. 6. The Supreme Court did not hold that due process required this. *See id.*

4. Notwithstanding this, it is worth mentioning the overall context in which cases like this come before the Court. The State of Texas may without violating the Constitution require inmates like applicant to serve their entire sentences day for day with no hope of parole or any other form of early release. Nevertheless, Texas citizens through their Legislature have provided for inmates like applicant to be reviewed for early release at

## THE REMEDY

The Court, contrary to the "plain" language of the applicable statutory scheme, further decides that "[w]ithout the two statutory findings, made only after timely due process notice to the inmate giving him an opportunity to submit materials, a parole panel must release an eligible inmate to mandatory supervision." This is an extreme, and potentially dangerous to the general public, remedy for any due process violation that may have occurred here. Instead of putting the public at risk with the early release from prison of dangerous inmates because of a parole panel's failure to comply with our orders, the Court should incarcerate the responsible Board officials under its contempt powers until they comply with the Court's orders. This, and not putting dangerous inmates back on the streets before they have served their sentences, is the usual method of enforcing our orders.

I respectfully dissent.

least once a year. The statutory scheme even *requires these inmates' release unless the* Board makes the necessary findings that would prevent this. Though the applicable statutory scheme does not require it, a parole panel also provides these inmates with an opportunity to submit materials each time they are reviewed for early release. In this case applicant received everything that he was entitled to receive under state law when the parole panel denied him early release based on the findings required by the statutory scheme. Arguably, this is all "the process that is due" applicant. *See Jimenez v. State,* 32 S.W.3d 233, 244–45 (Tex.Cr.App.2000) (McCormick, P.J., concurring) (due process requires that a defendant receive what state law provides).