**Ex Parte Stanley Wayne HILL, Applicant.**

**No. AP–75508.**

Court of Criminal Appeals of Texas.

Dec. 6, 2006.

Stanley Wayne Hill, pro se.

David W. Holmes, Assistant District Attorney, Wheeler, Matthew Paul, State's Attorney, Austin, for State.

*OPINION*

COCHRAN, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, WOMACK, HERVEY and HOLCOMB, JJ., joined.

We filed and set this application for a writ of habeas corpus to determine if applicant was improperly classified as "not eligible for mandatory-supervision release." We deny relief, but note that applicant is only temporarily ineligible. On May 6, 2005, a parole panel reviewed applicant for release on mandatory supervision, but it concluded that (1) applicant's accrued good conduct time is not an accurate reflection of his potential for rehabilitation, and (2) his release would endanger the public. It therefore denied release and reclassified him as mandatory-supervision ineligible. But the parole panel must reconsider him for release to mandatory supervision at least twice during the two years after the date of the initial determination. We an-

ticipate that it will do so, if it has not already done so.[1]

## I.

Applicant pled guilty to felony DWI in February 2002 and was sentenced to eight years' confinement. No direct appeal was taken. Applicant contends that he was originally designated as a mandatory-supervision prospect, but that he has been re-classified as ineligible for mandatory supervision without explanation. In support of his claim, applicant provides copies of two inmate time sheets. On the first time sheet, dated April 4, 2005, applicant is designated as a mandatory-supervision prospect, with a "short-way" discharge date of May 3, 2005. On the second sheet, dated October 26, 2005, applicant is designated as not eligible for mandatory supervision, and he has a discharge date of January 9, 2010.

The trial court initially forwarded the application to this Court without making findings of fact, conclusions of law, or a recommendation. Believing that applicant had alleged facts that, if true, might entitle him to relief, we held the application in abeyance and requested the trial court to resolve the fact issues related to applicant's claim. The trial court obtained an affidavit from the Texas Department of Criminal Justice (TDCJ) which states that (1) applicant's "offense is identified as not eligible for mandatory supervision release by statute," and (2) on "04–06–05 the offender was denied mandatory supervision by Board of Pardons and Paroles vote and

converted to non-mandatory supervision status pursuant to HB 1433." After considering the affidavit, the trial court made a single finding of fact:

> The records of the Texas Department of Criminal Justice reveal that the offense occurring January 9, 2002, for which the defendant herein was sentenced on February 21, 2002, is identified as not eligible for mandatory supervision release by statute and not subject to flat calculated parole eligibility status by statute.

We cannot fully accept the trial court's finding.

## II.

Texas Government Code § 508.147 provides,

> Except as provided by Section 508.149, a parole panel shall order the release of an inmate who is not on parole to mandatory supervision when the actual calendar time the inmate has served plus any accrued good conduct time equals the term to which the inmate was sentenced.[2]

Section 508.149(a) makes some inmates-those convicted of especially serious offenses and those who had used a deadly weapon in committing their crime-permanently ineligible for release on mandatory supervision.[3] Such inmates are either released on regular parole or required to serve their entire sentence.

Some of those statutorily eligible for release on mandatory supervision are not rehabilitated and still constitute a danger to the public.[4] Thus, the mandatory su-

---

1. The habeas record does not indicate whether applicant's parole panel review on May 6, 2005, was his first, second, or third review. In the absence of any documentation showing otherwise, we simply assume that it was his first.

2. TEX. GOV'T CODE § 508.147(a).

3. TEX. GOV'T CODE § 508.149(a); *see Ex parte Ervin,* 187 S.W.3d 386, 389 (Tex.Crim.App. 2005) (Section 508.149 is intended "to make all inmates who have prior convictions for serious offenses ineligible for mandatory supervision release").

4. *See Ex parte Retzlaff,* 135 S.W.3d 45, 48 (Tex.Crim.App.2004).

pervision statute permits "a parole panel to exercise some discretion in deciding whether a person who [is] eligible for release on mandatory supervision should, nonetheless, be kept in custody."[5] Under section 508.149(b),

> an inmate may not be released to mandatory supervision if a parole panel determines that: (1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and (2) the inmate's release would endanger the public.[6]

A parole panel that determines that an inmate should not be released on mandatory supervision must specify in writing its reasons for denying release.[7] Finally, "[a] determination under Subsection (b) is not subject to administrative or judicial review, except that the parole panel making the determination shall reconsider the inmate for release to mandatory supervision at least twice during the two years after the date of the determination."[8]

■ After three unsuccessful annual reviews, an inmate need not be reviewed again for release on mandatory supervision. But in any case, "[t]he onus is on a parole panel to invoke the review process and make its findings, not on the eligible inmate to request a review. Without a parole panel's two statutory findings, made only after timely due-process notice to the inmate that gives him an opportunity to submit materials, the Texas Department of Criminal Justice–CID must release an eligible inmate to mandatory supervision."[9] Thus, the mandatory supervision statutes vest "a liberty interest in the eligible inmate, and the statutory presumption is slanted toward release. The parole panel must justify non-release."[10]

### III.

■ In this case, TDCJ simultaneously states that applicant's "offense is identified as not eligible for mandatory supervision release by statute" and that on "04–06–05 the offender was denied mandatory supervision by Board of Pardons and Paroles vote and converted to non-mandatory supervision status pursuant to HB 1433."[11] Although both statements can be literally true, we can well understand and appreciate applicant's confusion. Applicant was convicted of DWI for an offense occurring on January 9, 2002. Applicant's DWI offense does not preclude mandatory-supervision release because it is not an offense enumerated in section 508.149(a). The judgment shows no deadly weapon finding or other aggravating circumstance which would make applicant ineligible for release on mandatory supervision. The TDCJ offender database does not show that applicant is serving any other sentences. The affidavit from TDCJ and fact-finding of the trial court are misleading insofar as they suggest that applicant's DWI conviction

---

5.  *Id.; see* TEX. GOV'T CODE § 508.149(b).

6.  TEX. GOV'T CODE § 508.149(b); *see Ex parte Retzlaff,* 135 S.W.3d at 48.

7.  TEX. GOV'T CODE § 508.149(c).

8.  TEX. GOV'T CODE § 508.149(d).

9.  *Ex parte Retzlaff,* 135 S.W.3d at 51.

10.  *Id.* at 49.

11.  "HB 1433" refers to the 1995 House Bill that enacted the discretionary mandatory-su-pervision law. 74th Leg., R.S., ch. 263, § 2, 1995 Tex. Gen. Laws 2592 (H.B. No. 1433). As enacted, HB 1433 amended article 42.18. of the Code of Criminal Procedure. This provision was later recodified in the Government Code at section 508.149(b). Presumably what TDCJ intends to convey by its notation is that a parole panel is not absolutely required to release applicant on mandatory supervision; rather, applicant is subject to release on *discretionary* mandatory supervision.

makes him statutorily ineligible for release on mandatory supervision.

We deny relief, however, because the parole panel exercised its discretion under section 508.149(b) and decided that applicant—who is statutorily eligible for release on mandatory supervision—should, nonetheless, be kept in custody because of his lack of rehabilitation and potential danger to the community. That discretionary finding is why applicant is temporarily classified as "not eligible for mandatory supervision release." Applicant retains his vested statutory entitlement to release on mandatory supervision, though it is a defeasible interest. Under section 508.149(d), the parole panel shall (assuming it has not already done so) reconsider applicant "for release to mandatory supervision at least twice during the two years after the date of [its original] determination."[12]

It would avoid confusion in the future, decrease the number of writ applications filed in the trial courts, and eliminate the need for affidavits from prison officials, if TDCJ clarified its inmate time sheets (or any other source traditionally consulted by inmates in determining their status) to show whether an inmate is absolutely ineligible for mandatory supervision under section 508.149(a), or is temporarily ineligible because he has been denied release based on section 508.149(b) findings. We have repeatedly noted that, to comply with due process in making the discretionary mandatory-release decision under section 508.149(b), the parole board must provide an inmate with timely notice that he will be considered for mandatory-supervision release prior to that review taking place.[13] In *Ex parte Retzlaff*, we held that "in the normal case, an inmate is entitled to notice of the specific month and year in which he will be reviewed for release on mandatory supervision" and that "he must be given at least thirty days advance notice that he will be reviewed in the specified month so that he has a sufficient opportunity to submit materials on his behalf."[14] An inmate should know his status in the interim. He should not have to guess whether he can come to the mandatory-supervision batter's plate in the first place or, if he can, how many strikes (whether it be zero, one, two, or three) he has against him. In this case, the materials submitted by TDCJ show that applicant has had one strike at the mandatory-supervision ball. After May 6, 2005, he had two more review opportunities. He has not yet struck out. We therefore, deny relief.

Copies of this opinion will be delivered to the Texas Department of Criminal Justice–CID and to the Texas Board of Pardons and Parole.

JOHNSON, J., filed a dissenting opinion, in which PRICE, J., joined.

KEASLER, J., concurred in the judgment.

JOHNSON, J., filed a dissenting opinion in which PRICE, J., joined.

"Argot: 1. an idiomatic vocabulary peculiar to a particular class or group of people

---

12. Tex. Gov't Code § 508.149(d).

13. *Ex parte Retzlaff*, 135 S.W.3d at 49 ("Timely notice, which provides sufficient opportunity to submit relevant, up-to-date information by affected parties, is a rudiment of due process, and it reassures both the individual and society that 'fair dealing rather than caprice will govern the affairs of men' "); *Ex parte Geiken*, 28 S.W.3d 553, 560 (Tex.Crim.App. 2000) ("The option of providing the Board with information supportive of release is of little practical use if the inmate is unaware that such a review will be taking place"); *Ex parte Shook*, 59 S.W.3d 174, 175 (Tex.Crim. App.2001) (following *Ex parte Geiken* ).

14. 135 S.W.3d at 50.

... devised for private communication and identification .... 2. the special vocabulary and idiom of a particular profession or social group." WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE, Gramercy Books, 1989.

Like many groups, the Board of Pardons and Paroles (BPP) appears to have developed an argot that is useful within the confines of intra-panel communication but is counter-productive when used outside of that environment. The plain language used in its communications with applicant is, at best, ambiguous and uninformative, at worst, incorrect and misleading.

There is a legitimate differentiation between mandatory supervision and discretionary mandatory supervision (a legislative oxymoron). The inexact use of the words "eligible" and "ineligible" seem to be producing much of the confusion. If BPP means that an inmate is ineligible for mandatory supervision, but eligible for discretionary mandatory supervision, then its communications with inmates should say so. "[O]ffense identified as not eligible for mandatory supervision release by statute" does not convey such a message. An inmate (and many a lawyer) will read such a notation to indicate that BPP is ignorant of the law or the facts. If an inmate's offense is not listed in Texas Government Code § 508.149, BPP will be thought to be ignorant of the facts. If an inmate's criminal history does not include an offense listed in Texas Government Code § 508.149, BPP will be thought to be ignorant of the law. Or both.

Coupling "offense identified as not eligible for mandatory supervision by statute" with "offender was denied mandatory supervision by Board of Pardons and Paroles vote and converted to non-mandatory supervision status pursuant to HB 1433" exacerbates the already ineffective communication. If an inmate is not eligible for mandatory supervision, denial of it is superfluous, and the inmate's status cannot be "converted" to non-mandatory supervision status because he already has that status.

I suspect that such inexact use of language generates a plethora of legal filings, not only in this Court, but also in BPP. The flood of paper might conceivably be stanched by the use of plain, accurate descriptions of actions taken by BPP and removal of notations, such as "HB 1433," that are vague (HB 1433 from which session?), uninformative, and cryptic for persons such as inmates. For example, the notification to an inmate after a release hearing might be one of the following: "Inmate is ineligible for release on mandatory supervision because of a prior conviction for an offense listed in Texas Government Code § 508.149"; "Inmate is eligible for discretionary mandatory supervision, but has been denied release because the inmate's accrued good-conduct time does not accurately reflect the inmate's potential for rehabilitation and the inmate's release would endanger the public. Texas Government Code § 508.149(b)"; "Inmate has been denied release on discretionary mandatory supervision for the third time and is therefore ineligible for further consideration for such release."

Given the opacity of the BPP's communication to applicant, I am unwilling to presume anything about BPP's intent. I would remand to establish what applicant's actual status is and, upon return from remand, reconsider the merits of applicant's complaint.

I respectfully dissent.