# IN RE TEXAS BOARD OF PARDONS AND PAROLES, Relator

## NO. 14-16-00223-CV

Court of Appeals of Texas,
Houston (14th Dist.).

Opinion filed June 2, 2016

---

Joseph Peter Corcoran, Austin, TX, for Relator.

Richard E. Wetzel, Austin, TX, for Real Party in Interest.

Panel consists of Justices Christopher, McCally, and Busby.

## OPINION

Tracy Christopher, Justice

On March 18, 2016, relator Texas Board of Pardons and Paroles (the Board) filed a petition for writ of mandamus in this court. *See* Tex. Gov't Code Ann. § 22.221 (West 2004); *see also* Tex.R.App. P. 52. In the petition, relator asks this court to compel the Honorable Michael Schneider, presiding judge of the 315th Juvenile Court of Harris County, to vacate the "Order on

Application for Writ of Habeas Corpus" he signed on February 4, 2016.

We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

The real party-in-interest is Z.Q. When Z.Q. was a juvenile, he received an adjudication of delinquent conduct for committing both a capital murder and an attempted capital murder in Cause No. 86,707, for which he received two determinant sentences of 40 years. Z.Q. was initially placed in the custody of the Texas Youth Commission (TYC).

In October of 1997, the juvenile court determined that Z.Q. should be transferred from the TYC to the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ–CID) to complete his sentences. Z.Q. is currently serving his 40–year determinate sentences in the custody of TDCJ–CID.

His initial parole review date was in May of 2014. In conducting its parole vote, the Board used the extraordinary vote provisions of section 508.046 of the Government Code, which, for release, requires that at least two-third of the members of the Board vote in favor of release. None of the seven board members voted to release Z.Q. The Board set his next parole review for June of 2017.

On July 2, 2015, Z.Q. filed an original application for writ of habeas corpus in the original juvenile court, pursuant to Article V, § 8 of the Texas Constitution (the Application). In the Application, Z.Q. asserted that the Board violated his constitutional right to due process by misapplying the Government Code provisions governing parole panels and votes. He argued that the Board erred in determining his parole under section 508.046, which requires a two-thirds majority vote of the entire

Board if the inmate was convicted of an offense under certain sections of the Penal Code. *See* Tex. Gov. Code § 508.046 (West 2012). Z.Q. argued that section 508.046 did not apply to him because he was not convicted of capital murder and is not a convicted capital felon. Z.Q. argued that he instead is entitled to have his parole determined by a simple majority vote of a three member panel as provided for by section 508.045.

The Application contains a "Certificate of Service" that a copy of the Application has been served on the District Attorney for Harris County. Counsel for Z.Q. also sent the Application by certified mail to Bettie Wells, the General Counsel for the Board, along with a letter dated January 13, 2016 stating "A hearing is set on February 2, 2016, at 9:30 am on the application in the 315th District Court."

The Board filed an affidavit with this court stating that (1) it has no record of receiving service of citation for the Application, as provided for by Rule 99 of the Texas Rules of Civil Procedure, (2) it has never filed a waiver of citation, and (3) neither the Board, nor its authorized attorneys appeared in the habeas litigation.

On February 4, 2016, the juvenile court heard the Application and signed an "Order on Application for Writ of Habeas Corpus" that ordered the Board to: (1) not subject Z.Q.'s parole determination to the inapplicable extraordinary vote provisions of Texas Government Code § 508.046; (2) proceed to have his parole determination made by a standard three member parole panel as statutorily required under Texas Government Code § 508.45, and (3) review Z.Q.'s consideration for parole consistent with the provisions of Texas Government Code § 499.053(d) (the "Habeas Order").

The Board's petition for writ of mandamus seeks to vacate the Habeas Order.

## II. Mandamus Standard

■ To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that relator has no adequate remedy by appeal. *In re Prudential Ins. Co.,* 148 S.W.3d 124, 135–36 (Tex.2004) (orig.proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt, L.P.,* 164 S.W.3d 379, 382 (Tex.2005) (orig.proceeding) (per curiam). The appellate court reviews the trial court's application of the law de novo. *See Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding).

## III. The Board has no adequate remedy by appeal.

■ We first consider whether the Board has an adequate remedy by appeal. Ordinarily, a respondent in a habeas action, such as the State, cannot appeal. *Board of Pardons & Paroles ex rel. Keene v. Ct. of App. of Tx., Eighth Dist.,* 910 S.W.2d 481, 483 (Tex.Crim.App.1995) (orig.proceeding). Because the State may not appeal an adverse ruling in a habeas proceeding, it has no adequate remedy at law, and mandamus is therefore appropriate. *Id.* (citing *State ex rel. Holmes v. Klevenhagen,* 819 S.W.2d 539 (Tex.Crim. App.1991) (orig.proceeding)). Juvenile delinquent cases are not an exception to this rule. *State v. Gonzales,* 459 S.W.2d 947, 948 (Tex.Civ.App.—San Antonio 1970, no writ).

Thus, the Board has no adequate remedy by appeal and the second requirement for mandamus relief is met.

## IV. Relator's Issues

The Board's petition states three issues or arguments for vacating the Habeas Order:

1. The Order is void because the juvenile court had no personal jurisdiction over the Board—a non-party to the civil proceeding below—to compel prospective and permanent actions of the Board.

2. The Order is void because it exceeded both the habeas and mandamus power of the juvenile court.

3. In the alternative, the Order should be vacated because the juvenile court failed to identify a constitutionally protected liberty interest upon which a cognizable habeas application might be granted, and no such liberty interest exists.

As discussed below, we conclude that the first two arguments are incorrect, but that the third is correct and the petition should therefore be granted.

## V. Analysis

**A. Z.Q. was not required to serve the Board with citation for the juvenile court to acquire habeas jurisdiction.**

■ In its first issue, the Board argues that the juvenile court lacked jurisdiction to issue the Habeas Order because Z.Q. was allegedly required to, but did not, obtain issuance and service of citation as provided for by Rules 99 and 106 of the Texas Rules of Civil Procedure. It is true that in a normal civil suit, in order to issue a binding order against a person, a court must possess personal jurisdiction through service and citation over that person. *See In re E.R.,* 385 S.W.3d 552, 563 (Tex.2012) (orig.proceeding); *CSR Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996).

An application for a writ of habeas corpus is not a normal civil suit, however.

*See McFarland v. Johnson*, 27 Tex. 105, 107 (1863) (a procedure by habeas corpus can in no legal sense be regarded as a suit or controversy between private parties.) For example, a respondent in a habeas proceeding has no right of appeal. *Id.* In *Ex parte Ramzy*, 424 S.W.2d 220, 223 (Tex.1968) (orig.proceeding), the court held: "A procedure by habeas corpus to be relieved of imprisonment ... can in no legal sense be regarded as a suit or controversy between private parties. In such a proceeding the petition for a writ of habeas corpus is for the relief of the Prisoner and the Prisoner only." *Id.* The writ of habeas corpus is "designed for the purpose of giving a speedy remedy to one who is unlawfully detained." *Id.*

Neither party has cited any case that outlines the service requirements in a habeas action in a juvenile trial court. In a habeas action stemming from a felony judgment, service of the application can be by certified mail or personal service. *See* Tex. Code Crim. Proc. Ann. art. 11.072 § 5(a) (West 2015). Article 11.07 does not apply to this habeas action, however: "Because juvenile proceedings are civil matters, the Court of Criminal Appeals has concluded that it lacks jurisdiction to issue extraordinary writs in such cases, even those initiated by a juvenile offender who has been transferred to the Texas Department of Criminal Justice because he is now an adult." *In re Hall*, 286 S.W.3d 925, 927 (Tex.2009) (orig.proceeding) (citing *Ex parte Valle*, 104 S.W.3d 888, 889 (Tex. Crim.App.2003)).

■ When a party files an application for a writ of habeas corpus in the appellate court, service of the application is governed by the normal rules of appellate procedure. Nothing in the rules of appel-

late procedure requires the issuance and service of citation. *See* Tex. R. App. P. 9.5; Tex.R.App. P. 52. Rather, the rules of appellate procedure only require that at the time of a document's filing, the filing party must serve a copy on all parties to the proceeding: (1) electronically, if the document is filed electronically, and (2) by mail, fax, or email if the document is not filed electronically. *See* Tex. R. App. P. 9.5. Thus, in other analogous habeas proceedings, service of the application by mail is sufficient; issuance and service of citation are not required.

Moreover, the Board's position that it must become an actual party to the action by the issuance and service of citation is belied by the actions of the Court of Criminal Appeals, which has granted habeas relief against the Board even when the Board was not made a party to the action through issuance and service of citation. *See e.g., Ex parte Geiken*, 28 S.W.3d 553, 560–61 (Tex.Crim.App.2000) (issuing habeas order that required the Board to again consider the applicant for mandatory release and provide him with timely notice that such consideration will occur); *Ex parte Retzlaff*, 135 S.W.3d 45, 51 (Tex. Crim.App.2004) (issuing habeas order that required the Board to provide the applicant with a new review for mandatory release along with certain notices at certain times); *Ex parte Shook*, 59 S.W.3d 174, 176 (Tex.Crim.App.2001) (same).

■ Z.Q. served both the State and the Board with the Application by certified mail.[1] Thus, the Board had notice and the option of either relying on the district attorney to oppose the Application on its behalf or appearing at the hearing and

---

1. Z.Q. accomplished service on the Board by sending the application to Bettie Wells, the General Counsel for the Board, by certified mail, along with a letter stating, "A hearing is set on February 2, 2016, at 9:30 am on the application in the 315th District Court."

opposing the Application.[2] We conclude that this is sufficient service.

## B. The Habeas Order did not exceed the power of the juvenile court for the reasons argued by the Board.

In its second issue, the Board makes a number of different arguments. First, the Board argues that the Habeas Order is void because it goes beyond the relief that may be granted under article 11.44 of the Code of Criminal Procedure. The Board argues that in a habeas proceeding, article 11.44 limits the court to only three remedies: (1) remanding the party to custody, (2) admitting him to bail, or (3) discharging him from custody. *See* Tex. Code Crim. Proc. art. 11.44 (West 2016).

█ Although article 11.44 provides for certain remedies, it does not state that these are the only remedies that a court may grant in a habeas proceeding. In fact, on several occasions, the Court of Criminal Appeals has granted habeas relief against the Board other than that specified in article 11.44. *See, e.g., Ex parte Geiken,* 28 S.W.3d at 560–61 (issuing habeas order that required the Board to again consider the applicant for mandatory release and provide him with timely notice that such consideration will occur); *Ex parte Retzlaff,* 135 S.W.3d at 51 (issuing habeas order that required the Board to provide the applicant with a new review for mandatory release along with certain notices at certain times); *Ex parte Shook,* 59 S.W.3d at 176 (same).

Second, the Board argues that the juvenile court had no authority to issue habeas relief against the Board because Z.Q. is not in the custody of the Board, but is in the custody of TDCJ–CID. This argument is misplaced because Z.Q.'s Application did not seek an order requiring the Board to release him from custody, but an order requiring the Board to make his parole determination by the simple majority vote of a three member panel as provided by section 508.45, which is a permissible habeas order under the cases cited above.

Finally, the Board argues that the Habeas Order is void to the extent that it grants mandamus relief because only the Texas Supreme Court has authority to issue a writ of mandamus against an executive department of the State such as the Board. *See* Tex. Gov't Code § 22.002(c) (West 2016). This argument is also misplaced because the Habeas Order does not grant mandamus relief and the Board has cited no cases that would compel us to consider this order a mandamus.

## C. Z.Q. failed to identify a constitutionally protected liberty interest on which a cognizable habeas application might be granted.

█ The Board argues that the juvenile court abused its discretion in granting habeas relief because Z.Q. did not establish that the Board violated any of Z.Q.'s constitutional rights. We agree.

█ "Habeas corpus is reserved for those instances in which there is a jurisdictional defect in the trial court which ren-

**2.** As the party seeking relief, Board has the burden of providing this court with a sufficient record to establish his right to mandamus relief. *See Walker v. Packer,* 827 S.W.2d 833, 837 (Tex.1992) (orig. proceeding); Tex. R. App. P. 52.7(a)(1) (relator must file with petition "a certified or sworn copy of every document that is material to the relator's claim for relief and that was filed in any

underlying proceeding"). The Board has not met this burden with respect to its first issue. Although the Board claims in its petition that it did not authorize the district attorney to appear on its behalf, the Board failed to bring the reporter's record to this court. The district attorney may well have entered an appearance on behalf of the Board.

ders the judgment void, or for denials of fundamental or constitutional rights." *Ex parte Carmona*, 185 S.W.3d 492, 494 (Tex. Crim.App.2006). "A writ of habeas corpus is available only for relief from jurisdictional defects and violations of constitutional or fundamental rights." *Ex parte Douthit*, 232 S.W.3d 69, 71 (Tex.Crim.App. 2007).

In his Application, Z.Q. argued that the Board violated his constitutional right to due process by misapplying the statutes governing parole panels and votes. He argued that the Board erroneously applied the supermajority vote provision of section 508.046 of the Government Code, when instead it should have applied the simple majority vote provision of section 508.045.

 However, a writ of habeas corpus generally is not a proper remedy for a violation of a procedural statute, even a "mandatory" statute. *Ex parte McCain*, 67 S.W.3d 204, 206 (Tex.Crim.App.2002). Not all government decisions implicate constitutional rights, and not all such decisions are subject to review by habeas corpus. *Ex parte Geiken*, 28 S.W.3d at 556. Decisions of the Executive Branch, however serious their impact, do not automatically invoke due process protection; there simply is no constitutional guarantee that all executive decision-making must comply with standards that assure error-free determinations. *Id.* "Many decisions simply are not cognizable on habeas corpus review." *Id.* at 557.[3]

The test for determining whether a claim is cognizable on habeas corpus is explained by the Court of Criminal Appeals in *Geiken*. First, the Court held that an applicant can mount a due process challenge to the procedures used by the parole board in considering whether to release the applicant under the mandatory supervision statute, section 508.149 of the Government Code. *Ex parte Geiken*, 28 S.W.3d at 557. The Court then turned to the next question: whether the procedures used by the Board in deciding whether to release an eligible offender to mandatory supervision provide sufficient procedural due process safeguards in light of any liberty interest created under the statute. *Id.* at 558. "This is a two-step inquiry. First, we must decide if any liberty interest is created by the Texas statute. If not, then no procedural due process safeguards are required." *Id.*

The statute at issue in *Geiken* provides that a prisoner *shall* be released to mandatory supervision when his actual time served and accrued good conduct time add up to his total sentence. Tex. Gov't Code Ann. § 508.147(a). Unlike parole, which requires that the Board vote in favor of release, the mandatory supervision statute requires that the offender be released absent Board action to the contrary. *Id.* The Court of Criminal Appeals noted: "The Supreme Court has determined that a liberty interest is created when state statutes use such mandatory language." *Ex parte Geiken*, 28 S.W.3d at 558 (citing *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 2, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979)). In *Greenholtz*, the United States Supreme Court held that statutory language directing that an inmate shall be released unless certain reasons were found to deny release gave rise to a presumption that parole release would be granted, requiring some constitu-

**3.** Citing *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir.1995) (errors in the state habeas process are not a basis for federal habeas corpus relief); *Valles v. Lynaugh*, 835 F.2d 126, 127 (5th Cir.1988) (no constitutional issues raised by failure to give lesser included offense instruction); *Jackson v. Alabama*, 530 F.2d 1231, 1236 (5th Cir.1976) (no absolute constitutional right to presentence jail time credit).

tional protection. *Id.* at 558. Accordingly, the Court of Criminal Appeals held in *Geiken* that "there is a protectable liberty interest in mandatory supervision release" because the statute requires that the offender be released absent Board action to the contrary. *Id.* at 558–59.

Thus, under *Geiken* and *Greenholtz,* a statute pertaining to parole only creates a protectable liberty interest if the statute contains language mandating the release of the inmate absent contrary action by the Board. Sections 508.045 and 508.046 of the Government Code relied upon by Z.Q., unlike section 508.147 at issue in *Geiken,* do not contain any language that mandates release of the inmate if certain conditions are met. Rather, sections 508.045 and 508.046 merely state the voting requirements for parole panels and do not impose any obligation on the members of the panel to grant parole and release the inmate. Accordingly, under *Geiken* and *Greenholtz,* sections 508.045 and 508.046 do not create any liberty interest that is cognizable on habeas corpus. The juvenile court abused its discretion by misapplying the law to implicitly hold otherwise.

This conclusion is supported by federal case law. In *Garcia v. Stephens,* No. 2:13–CV–222, 2014 U.S. Dist. LEXIS 78764 (S.D.Tex. Apr. 9, 2014), the court was presented with the same issue presented in this case. The petitioner argued, like Z.Q., that the plain language of the Texas Government Code required review for parole by a three-member panel in accordance with section 508.045, and that the Board wrongly reviewed his parole eligibility under the super-majority provisions of section 508.046. *Id.* at *17. The district court held that any misapplication of these statutes is not cognizable on habeas review because the petitioner has no liberty interest in obtaining parole. *Id.* at *18–19.

"States have no duty to establish a parole system and a prisoner has no constitutional right to be released before the expiration of his sentence." *Id.*; *see also Johnson v. Rodriguez,* 110 F.3d 299, 308 (5th Cir.1997) ("It is therefore axiomatic that because Texas prisoners have no protected liberty interest in parole they cannot mount a challenge against any state parole review procedure on procedural (or substantive) Due Process grounds."). The Fifth Circuit has repeatedly recognized that the Texas parole statutes create no constitutional right to release on parole. *See Williams v. Briscoe,* 641 F.2d 274, 277 (5th Cir.1981); *Allison v. Kyle,* 66 F.3d 71, 74 (5th Cir.1995); *Orellana v. Kyle,* 65 F.3d 29 (5th Cir.1995); *Gilbertson v. Tex. Bd. of Pardons & Paroles,* 993 F.2d 74, 75 (5th Cir.1993); *Creel v. Keene,* 928 F.2d 707, 712 (5th Cir.1991); *see also Blassingame v. Stephens,* CV H–16–0478, 2016 WL 828149, at *2 (S.D.Tex. Feb. 29, 2016) ("Because [the inmate] cannot demonstrate that he was denied parole in violation of a constitutionally protected liberty interest, he is not entitled to habeas corpus relief on this issue").

None of the decisions cited by Z.Q. in his response hold that the Board's alleged misapplication of section 508.046 constitutes a violation of his constitutional rights for which habeas relief is available. Because section 508.045 of the Government Code (which provides for a simple majority vote by a three member parole Board panel) does not create a liberty interest that is cognizable on habeas corpus review, the juvenile court's Habeas Order is an abuse of discretion.

## VI. CONCLUSION

Because the Habeas Order is an abuse of discretion for which there is no remedy by appeal, the Board is entitled to mandamus relief. We therefore direct the juve-

nile court to vacate its "Order on Application for Writ of Habeas Corpus" signed on February 4, 2016.

We are confident that the juvenile court will act in accordance with this opinion. The writ of mandamus will issue only if the juvenile court fails to do so.