**Ex parte David Lee GEIKEN, Applicant.**

**No. 73580.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 4, 2000.

---

**554**

Keith S. Hampton, Austin, for appellant.

Lisa Stewart, Asst. Dist. Atty., Austin, for the State.

## *OPINION*

KELLER, J. delivered the opinion of the Court in which MEYERS, MANSFIELD, PRICE, HOLLAND, JOHNSON, and KEASLER, J.J., joined.

This is a post-conviction application for a writ of habeas corpus forwarded to this Court pursuant to Article 11.07, V.A.C.C.P. Applicant was convicted of securing execution of a document by deception and was sentenced to four years in the Texas Department of Criminal Justice, Institutional Division. No appeal was taken from this conviction.

We filed and set this application to determine whether the Texas Department of Criminal Justice is providing due process in making the decision whether to deny mandatory supervision release to eligible inmates who were convicted of offenses committed on or after September 1, 1996.

Because there was no affirmative finding regarding use of a deadly weapon and applicant was not convicted of certain enumerated offenses, applicant is eligible for mandatory supervision. Article 42.18, § 8(c) V.A.C.C.P. (1996); V.T.C.A. Gov't Code § 508.147(a) (1999). In 1996, the Legislature amended the mandatory supervision statute. Under the old statute, an eligible prisoner was automatically released when the actual time served plus accrued good conduct time added up to the maximum term to which the inmate was sentenced. See Art. 42.18, § 8(c) V.A.C.C.P. (1995). Under the amended statute, prisoners who are eligible under the statutory formula may be denied release if a parole panel determines that the inmate's accrued good conduct time credits do not accurately reflect his potential for rehabilitation and that he would endanger the public if released. Art. 42.18, §§ 8(c), 8(c–1) V.A.C.C.P. (1996). The amendments to the Code of Criminal Procedure were effective September 1, 1996, and these provisions were later moved to the Government Code. V.T.C.A. Gov't Code § 508.149(b).

Applicant committed his offense on November 6, 1996, and he was sentenced on March 26, 1997. On December 1, 1998, a three member panel of the Board of Pardons and Paroles ("Board") voted against releasing applicant to mandatory supervision. The Board voted to deny release for three reasons: (1) criminal record and/or nature of the offense, (2) violation of previous probation, parole, or mandatory supervision, and (3) multi-offender status. Applicant did not receive notice prior to the Board vote of the fact that he was to be considered for mandatory release. Applicant asserts that the decision to deny him mandatory supervision release was made without affording him due process and that the Board was incorrect in determining that his accrued good conduct time credits do not accurately reflect his potential for

rehabilitation and that he would endanger the public if released.

## A. Cognizability

■ The first question we must consider is whether Article 11.07 is the proper method for presenting applicant's claim to this Court. We instructed the parties to brief the issue of whether Applicant's habeas corpus claims alleging illegal confinement arising after his felony conviction, but not contesting the validity of the judgment, may be raised under Code of Criminal Procedure Art. 11.07 after the 1995 amendments.

The Court recently answered this question in the affirmative. *Ex parte Whiteside,* 12 S.W.3d 819, 822 n. 1 (Tex.Crim. App.2000). The 1995 amendments to the Code of Criminal Procedure did not narrow the class of claims cognizable on an Article 11.07 post conviction writ of habeas corpus. *Id.*

## B. Reviewability

Next, we consider whether Government Code section 508.149(d) precludes this Court from reviewing applicant's claims. The statute provides in relevant part:

(b) An inmate may not be released to mandatory supervision if a parole panel determines that:

(1) the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and

(2) the inmate's release would endanger the public.

(c) A parole panel that makes a determination under Subsection (b) shall specify in writing the reasons for the determination.

(d) A determination under Subsection (b) is not subject to administrative or judicial review, except that the parole panel making the determination shall reconsider the inmate for release to mandatory supervision at least twice during the two years after the date of the determination.

V.T.C.A. Gov't Code § 508.149.

■ Applicant argues that the Legislature cannot constitutionally preclude judicial review of the Board's decision because precluding review would violate the separation of powers doctrine and operate as a suspension of the writ by leaving applicant with no recourse. But the Texas constitution does not require that every type of decision be subject to judicial review. Many release and prison classification decisions are not subject to judicial review. For example, while the improper ex post facto application of parole statutes falls within the purview of this Court, the decision to release or not release an inmate, even though he is eligible for parole, remains within the sound discretion of the Board of Pardons and Paroles. *Ex parte Rutledge,* 741 S.W.2d 460 (Tex.Crim.App. 1987), *overruled on other grounds by, Ex Parte Hallmark,* 883 S.W.2d 672, 674 (Tex. Crim.App.1994). Similarly, while the process of assigning inmate classification is subject to some minimal due process restrictions, the classification decision itself is not subject to judicial review. *Ex parte Palomo,* 759 S.W.2d 671 (Tex.Crim.App. 1988). The simple fact is that not all government decisions implicate constitutional rights and not all such decisions are subject to review. As the Supreme Court noted, "[d]ecisions of the Executive Branch, however serious their impact, do not automatically invoke due process protection; there simply is no constitutional guarantee that all executive decisionmaking must comply with standards that assure error-free determinations. This is especially true with respect to the sensitive choices presented by the administrative decision to grant parole release." *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675 (1979) (citations omitted).

■ Applicant points this Court to many federal habeas corpus cases for the

proposition that a prisoner's right to file habeas corpus applications should not be impaired. We decline to hold that the suspension of the writ provisions of the federal constitution impose any restrictions or obligation on the courts of this State. Applicant is also incorrect in arguing that any infringement whatsoever on the habeas corpus process is impermissible. The very federal courts upon which he relies impose many severe restrictions on the habeas corpus process, including both common law and statutory abuse of the writ provisions and time limits on the filing of habeas corpus petitions. *McCleskey v. Zant,* 499 U.S. 467, 489, 111 S.Ct. 1454, 1468, 113 L.Ed.2d 517, 541 (1991) (abuse of the writ); 28 U.S.C. § 2244(b) (statutory prohibition against second or successive petitions); 28 U.S.C. § 2244(d) (statutory time limit); 28 U.S.C. § 2254 Rule 9(a-b) (rules against abusive and delayed applications).

The suspension of the writ clause does not create a cause of action out of any decision made concerning a convicted defendant. Many decisions simply are not cognizable on habeas corpus review. *Nichols v. Scott,* 69 F.3d 1255, 1275 (5th Cir.1995) (errors in the state habeas process are not a basis for federal habeas corpus relief), *cert. denied,* 518 U.S. 1022, 116 S.Ct. 2559, 135 L.Ed.2d 1076 (1996); *Valles v. Lynaugh,* 835 F.2d 126, 127 (5th Cir.1988) (no constitutional issues raised by failure to give lesser included offense instruction); *Jackson v. Alabama,* 530 F.2d 1231, 1236 (5th Cir.1976) (no absolute constitutional right to presentence jail time credit).

■ Applicant also argues that the statutory criteria are too vague to provide any guidance to the Board in making its decision and that this Court should, because of this vagueness, hold this portion of the statute unconstitutional. The statute calls on the Board to evaluate the inmate's potential for rehabilitation and whether his release would endanger the public. V.T.C.A. Gov't Code § 508.149(b). These

are valid concerns in making the release decision and are not so vague as to provide the Board with no guidance in their decision. The early release decision is necessarily subjective and cannot be limited to rigidly defined factors. In creating a parole or other early release system, "the state may be specific or general in defining the conditions for release and the factors that should be considered by the parole authority." *Greenholtz,* 442 U.S. at 8, 99 S.Ct. at 2104, 60 L.Ed.2d at 676.

■ The mandatory supervision statute expressly precludes review of "a determination under Subsection (b)." Two "determinations" are called for under Subsection (b): whether accrued good conduct time accurately reflects the inmate's potential for rehabilitation and whether the inmate's release would endanger the public. We hold that § 508.149(d), prohibiting judicial review of these determinations, does not violate the separation of powers doctrine and does not operate as a suspension of the writ.

■ However, nothing in the statute explicitly precludes judicial review of the *process* for arriving at these determinations. In a somewhat analogous context, we have reviewed procedures that relate to the granting of good time and parole without reviewing the parole board's ultimate decision granting or denying good time or parole. *Ex parte Ruiz,* 750 S.W.2d 217, 218 (Tex.Crim.App.1988)(requiring the parole board to consider the applicant for eligibility for good time credits under the prison management act); *see also Rutledge,* 741 S.W.2d at 462–463.

Absent more definite guidance from the Legislature, we decline to extend the statute beyond its explicit language. We hold, therefore, that applicant can mount a due process challenge to the procedures used by the parole board in considering whether to release applicant to mandatory supervision.

### C. What Process is Due?

Having determined that the procedures used by the Board are subject to judicial review, even though its decision is not, we now turn to the next question: whether the procedures used by the Board of Pardons and Paroles in deciding whether to release an eligible offender to mandatory supervision provide sufficient procedural due process safeguards in light of any liberty interest created under the statute. This is a two-step inquiry. First, we must decide if any liberty interest is created by the Texas statute. If not, then no procedural due process safeguards are required. If we determine that a liberty interest does exist, then we must decide whether the procedures implemented by the Board of Pardons and Paroles are sufficient.

█ As for the first question, the language of the statute does create a liberty interest in mandatory supervision release. See *Greenholtz,* 442 U.S. at 11–12, 99 S.Ct. at 2105, 60 L.Ed.2d at 678; *Board of Pardons v. Allen,* 482 U.S. 369, 377–378, 107 S.Ct. 2415, 2420–2421, 96 L.Ed.2d 303, 312–313 (1987). The statute at issue in this case provides that a prisoner shall be released to mandatory supervision when his actual time served and accrued good conduct time add up to his total sentence. V.T.C.A. Gov't Code § 508.147(a). Unlike parole, which requires that the Board vote in favor of release, the mandatory supervision statute requires that the offender be released absent Board action to the contrary: [1]

> Except as provided by Section 508.149, *a parole panel shall order the release of an inmate* who is not on parole to mandatory supervision when the calendar time the inmate has served plus any accrued good conduct time equal the term to which the inmate was sentenced.

V.T.C.A. Gov't Code § 508.147(a)(emphasis added).

The Supreme Court has determined that a liberty interest is created when state statutes use such mandatory language. *Greenholtz,* 442 U.S. at 11–12, 99 S.Ct. at 2105, 60 L.Ed.2d at 678. In *Greenholtz,* the Supreme Court held that statutory language directing that an inmate shall be released unless certain reasons were found to deny release gave rise to a presumption that parole release would be granted, requiring some constitutional protection. Similarly, in *Board of Pardons v. Allen,* the Supreme Court again found that a statute's use of mandatory language, specifically the word "shall," creates a presumption that release will be granted when certain findings are made. *Allen,* 482 U.S. at 377, 107 S.Ct. at 2420–2421, 96 L.Ed.2d at 313.

Although the parole system in Texas creates no such presumption, the mandatory supervision statute is quite similar to the Nebraska and Montana parole statutes at issue in *Greenholtz* and *Allen.* In Texas, the inmate "shall" be released to mandatory supervision unless certain findings are made, specifically that "the inmate's accrued good conduct time is not an accurate reflection of the inmate's potential for rehabilitation; and the inmate's release would endanger the public." V.T.C.A. Gov't Code § 508.149(b).

The State contends that there are several reasons for holding that no liberty interest is created by the Texas statute. Specifically, the State argues that the Texas statute begins with words of exception, rather that words of entitlement. The State argues that beginning the statute with a reference as to how release may be denied indicates that only a limited right of expectation follows. This argument ignores the fact that the statute still contains mandatory language requiring release. That limitations may be placed on release

---

**1.** The record indicates that Applicant reached his mandatory supervision date on October 11, 1998, but he was not released and the Board did not make the mandatory supervi-

sion "veto" vote until December 1, 1998. Applicant does not raise any issue related to the timing of the Board vote.

if the Parole Board finds that certain conditions exist does not deprive the statute of its mandatory character. *Board of Pardons v. Allen,* 482 U.S. at 378, 107 S.Ct. at 2421, 96 L.Ed.2d at 313. In *Allen,* the Supreme Court specifically rejected the proposition that a statute mandating release unless certain findings were made is different from a statute that mandated release if, when, or subject to such findings being made. *Id.*

The State also argues that Section 508.149 establishes substantial limitations on the release decision. The State points out that many inmates are exempt from the mandatory supervision system altogether because of their offense or one of their prior offenses. The fact that there are a limited number of inmates eligible for consideration under the mandatory supervision statute also does not deprive the statute of its mandatory nature. That the statute does not apply to all offenders in the criminal justice system does not change the fact that the language of the statute requires release absent certain findings.

Finally, the State argues that the fact that the Legislature exempted the decision of the Parole Board from judicial review indicates a legislative intent that the Board be given unfettered discretion in its mandatory release decision. That the decision itself is not subject to judicial review evidences no legislative intent to deny due process to those who are the subject of the decision. The language of the statute itself refutes this argument, requiring that certain findings be made before release may be denied. V.T.C.A. Gov't Code § 508.149(b). The Supreme Court also rejected this argument in *Allen.* The court noted that the delegation of significant discretion to the decisionmaker did not deprive the prisoner of the liberty interest in release created by the mandatory language of the statute. *Board of Pardons v. Allen,* 482 U.S. at 375, 107 S.Ct. at 2419, 96 L.Ed.2d at 311.

Under certain circumstances, and absent certain findings by the Parole Board, the language of the Texas statute requires release. It therefore creates a legitimate, although limited, expectation of release.

Having determined that there is a protectable liberty interest in mandatory supervision release, we must now determine if the procedures implemented by the Board to deny an eligible offender mandatory supervision are sufficient to provide eligible inmates with due process. The affidavit of Kim Vernon, Assistant General Counsel for the Board of Pardons and Paroles, states:

> When an inmate becomes parole eligible, the Board votes on whether to grant parole. If parole is denied, the Board lists reasons for the denial and sets the months and date of the next vote (which must occur within three years). If the inmate's mandatory supervision date will occur within three years, the Board may, in the alternative, order a serve-all. The serve-all vote indicates that the next release consideration will be for mandatory supervision on the date calculated by TDCJ–ID. In all cases the inmate is notified of the Board's decision and reasons for the denial of parole or mandatory supervision. If, as in Applicant's case, the last parole vote is less than six months from the first mandatory supervision vote that is due, the Board may vote on both releases. The same file material used to determine consideration for parole release is used to consider mandatory supervision release.
>
> All inmates who are up for parole or mandatory supervision consideration may tender or have tendered to the Board on their behalf information in support of release. The Board receives such information either in writing or by personal phone calls and visits from relatives, friends or legal representative of the inmate. Likewise, all inmates who are denied parole or mandatory supervision may request further review by the Board pursuant to Board Rule 145.17.

▮ If a liberty interest is created by the statute, due process requires notice and a meaningful opportunity to be heard. *LaChance v. Erickson*, 522 U.S. 262, 266, 118 S.Ct. 753, 139 L.Ed.2d 695 (1998). If release is denied, the inmate must be informed in what respects he falls short of qualifying for early release. *Greenholtz*, 442 U.S. at 16, 99 S.Ct. at 2108, 60 L.Ed.2d. at 681. In accordance with the demands of due process, the record indicates that the Board provides reasons for the denial when such a decision is made. Applicant is not pleased with these reasons and considers them inadequate, but that question is not reviewable by this Court. V.T.C.A. Gov't Code § 508.149(d). The specificity demanded by Applicant is not called for by statute, nor is it required by due process. *Greenholtz*, 442 U.S. at 15, 99 S.Ct. at 2108, 60 L.Ed.2d. at 680–681; V.T.C.A. Gov't Code § 508.149(b). Due process does not require that the Board provide the particulars in the inmate's file upon which it rested the decision to deny release. Id.

▮ However, the record indicates that the Board is not providing inmates with notice and a meaningful opportunity to be heard. The current procedures provide that an inmate "may tender or have tendered to the Board on their behalf information in support of release." Unfortunately, these procedures provide no notice that review is imminent. The record indicates that the Board provides inmates with the reasons for their decision, but no forewarning that the inmate is being considered. The option of providing the Board with information supportive of release is of little practical use if the inmate is unaware that such a review will be taking place.[2]

The opportunity to be heard does not necessarily include the right to a live hearing before the Board or a Board panel. The Nebraska procedures at issue in

*Greenholtz* provided for a two-step hearing process. However, a live hearing in front of the parole board was not essential to the Supreme Court's decision in that case. The hearing process in *Greenholtz* was a creature of the Nebraska statute, not due process. *Greenholtz*, 442 U.S. at 14, 99 S.Ct. at 2107, 60 L.Ed.2d at 680. "Merely because a statutory expectation exists cannot mean that in addition to the full panoply of due process required to convict and confine there must also be repeated, adversary hearings in order to continue the confinement." *Id.* Due process requires only the meaningful opportunity to be heard.

When a statute creates a liberty interest in release, as we have determined that the Texas statute does, the inmate is entitled to the opportunity to be heard before the making of the release decision. However, a live hearing is not required. If the Board provides inmates with prior notice of the fact that they are to be considered for mandatory supervision release, then the inmates will be able to make use of their ability to "tender or have tendered to the Board on their behalf information in support of release."

We hold that, to comply with due process in making the mandatory release decision, the Board must provide an inmate with timely notice that he will be considered for mandatory supervision release prior to that review taking place. This will provide eligible inmates with the warning that is necessary to allow them to submit any information that they feel relevant to the Board decision.

In this case, Applicant was not provided with notice of the fact that he would be considered for mandatory release prior to that consideration taking place. Relief is granted in part. The Parole Board shall again consider Applicant for mandatory release and provide him with timely notice

---

**2.** Although Kim Vernon's affidavit indicates that a parole panel's decision to deny release is subject to an internal review within the Board of Pardons and Paroles, this statement would seem contrary to the language of the statute—barring *administrative* as well as judicial review of the parole panel's decision. *See* V.T.C.A. Gov't Code § 508.149(d).

that such consideration will occur. All other relief requested is denied.

Copies of this opinion shall be sent to the Texas Department of Criminal Justice, Institutional and Paroles Divisions, as well as the Texas Board of Pardons and Paroles.

McCORMICK, P.J., concurs in the result.

WOMACK, J., filed a dissenting opinion.

WOMACK, Justice, dissenting.

In my view, a convicted person who seeks relief from an error in an administrative decision of the Department of Criminal Justice may not use the procedure in article 11.07 of the Code of Criminal Procedure, which "establishes the procedures for an application for a writ of habeas corpus in which the applicant seeks relief from a felony judgment imposing a penalty other than death." * *See Ex parte Whiteside*, 12 S.W.3d 819, 822 (Tex.Cr. App.2000) (Womack, J., concurring). Because this application does not seek relief from a judgment, I would dismiss it without prejudice to the applicant's seeking relief through a proper procedure. I respectfully dissent.

---

* Tex.Code Crim. Proc. art. 11.07, § 1.