Ex Parte Craig Ronald CAMPBELL, Applicant.

No. AP–75838.

Court of Criminal Appeals of Texas.

Oct. 15, 2008.

**918**

Perry Stevens, Angleton, for appellant.

Raethella Jones, Asst. D.A., Angleton, Jeffrey L. Van Horn, State's Attorney, Austin, for State.

KELLER, P.J., delivered the opinion of the Court in which WOMACK, KEASLER, HERVEY, and COCHRAN, JJ., joined.

We filed and set this case to determine whether and under what circumstances a releasee who has never been convicted of a "reportable offense" may be required to comply with sex offender conditions of ear-

ly release. We hold that the parole panel was authorized by statute to impose sex offender conditions in general, and a child safety zone condition in particular, upon this applicant, and we hold that these conditions were not imposed in violation of due process.

## I. BACKGROUND

In 1992, applicant pleaded guilty to burglary of a building[1] as an habitual offender[2] and was sentenced to thirty-five years in prison. In addition to prior felony convictions, applicant also had two prior misdemeanor convictions: one for indecent exposure[3] and one for assault.[4] According to a police report in the indecent exposure case, applicant had exposed himself to four young children who were playing on their front lawn. Applicant unzipped his pants, pulled his penis out, said, "[H]ey girl, look," and moved his penis around with his hand. A police report in the assault case indicated that applicant had forced his way into a sixty-year-old woman's home, tried to spread her legs apart, and moved toward her genitals. The report indicated that the district attorney's office had originally advised the arresting officer to file an attempted sexual assault charge.

On July 5, 2006, applicant was released on parole,[5] with special condition "L"— requiring the maximum level of supervision. On July 10, 2006, the parole division of the Texas Department of Criminal Justice notified applicant that it was considering requesting that a parole pan-

---

1. See TEX. PEN.CODE § 30.02. Applicant was charged with the variants of burglary that require proof of intent to commit theft or the commission or attempted commission of theft. See id., § 30.02(a)(1), (3).

2. See id., § 12.42(d).

3. See id., § 21.08.

4. See id., § 22.01.

5. Applicant's habeas application, the trial court's findings, and this Court's "file and set" order all refer to applicant having been released on mandatory supervision. Examination of the official records reveals, however, that applicant was released on parole, not mandatory supervision.

el of the Board of Pardons and Parole impose special condition "X"—sex offender conditions. The July 10th notice informed applicant that he had a right to submit information on his own behalf to give reasons why the sex offender conditions should not be imposed. The notice gave a deadline of August 7, 2006. Applicant did not submit a response.

On August 11, 2006, the parole panel held a hearing on the matter. Applicant was not given the opportunity to attend this hearing. The parole panel voted to impose special condition "O" (other), ordering applicant to submit to a sex offender evaluation. On August 24, 2006, applicant submitted to a sex offender interview with Aaron P. Pierce, Ph.D. During the interview, Pierce asked applicant to explain his arrests for the two offenses outlined in the notice. With respect to the assault case, applicant replied that he was drunk and intended to break into a house. When asked whether he attempted to engage in sexual activity with the woman in the house, applicant stated, "I don't think so; I was drunk." With respect to the indecent exposure case, applicant said he was just "taking a leak in an area where there were kids." Based upon those answers and other information obtained in the interview, Pierce recommended that applicant be required to complete "a sexual offense specific treatment program."

On October 6, 2006, the parole panel imposed special condition X. Included within special condition X was a child safety zone condition. On October 11, 2006, applicant received notice of the additional conditions from his parole officer. The parole officer's report indicated that applicant was under home confinement; was permitted to leave his residence only for work, church, medical emergencies, and sex offender treatment; and was prohibited from going within a certain distance, specified by the Board of Pardons and Parole, of premises where children commonly gather.

On November 27, 2006, applicant admitted to a parole officer that he had been going to his father's house every day of the week between 5:30 and 6:30 p.m. and that he was aware that his father's house was in a child safety zone.[6] Applicant stated that he went to his father's house to eat and shower because his sponsor house did not have hot water. Subsequently, applicant's parole was revoked for failure to follow the instructions of his parole officer and for failure to avoid child safety zones.

In an application for a writ of habeas corpus, applicant contended that, after being paroled out on mandatory supervision, the parole panel "tacked on" sex offender registration and treatment programs in violation of his constitutional rights. He claimed that he "was never convicted of any sex related offenses to initiate said conditions." He further claimed that the "child safety zone" condition should never have been applied to him and that he should be released back to mandatory supervision without sex offender conditions.

After designating issues and receiving an affidavit and various documents, the district court made the following findings of fact:

(1) [Applicant] has never been convicted or adjudicated guilty of a "reportable" offense as defined by Article 62.001(5), Code of Criminal Procedure;

(2) There was a sexual component to applicant's prior offense of indecent exposure; however, it was applicant's first

---

6. The house was within 500 feet of what was either a "Head Start" school (according to the revocation allegations) or a day care center (applicant's testimony). Applicant had previously been moved from that residence to his sponsor residence.

conviction for indecent exposure; therefore, it is not a reportable conviction under Article 62.001(5), Code of Criminal Procedure;

(3) Applicant did not violate conditions of mandatory supervision that resulted in the revocation of his mandatory supervision, because those conditions relating to sexual offenders did not apply to applicant.

Based on its findings of fact, the district court made the following conclusions of law:

(1) Applicant did not violate conditions of mandatory supervision that resulted in the revocation of his mandatory supervision, because those conditions relating to sexual offenders did not apply to applicant;

(2) Applicant is entitled to mandatory release without sex-offender related conditions.

## II. ANALYSIS

Citing various statutes and relying upon *Coleman v. Dretke*,[7] applicant contends that sex offender conditions may be imposed only upon offenders who have a "reportable offense" under Chapter 62. Alternatively, relying upon *Coleman*, applicant contends that sex offender conditions were imposed upon him in violation of due process because (1) he had not been convicted of a "reportable offense" that would justify imposition of sex offender conditions without a hearing, and (2) he was not given advance notice that he was being considered for sex offender conditions and an opportunity to respond. Be-

cause *Coleman* comprises a crucial part of applicant's arguments, we discuss it before turning to applicant's contentions.

### A. *Coleman*

Coleman was released on parole on a burglary conviction.[8] While on parole, he was indicted for aggravated sexual assault of a child and indecency with a child by contact.[9] He pleaded guilty to, and was convicted of, only assault, and his parole on the burglary conviction was revoked.[10] He was later released to mandatory supervision on the burglary offense, on the condition that he reside in a halfway house until employed.[11] Over a month after that, without affording advance notice or a hearing, a parole panel imposed two additional conditions of release: that he register as a sex offender and that he attend sex offender therapy.[12] Coleman failed to participate in sex offender therapy, and as a result, his mandatory supervision release was revoked.[13]

Coleman argued that imposing sex offender registration and therapy as conditions of his early release, without affording the opportunity to contest his sex offender status, violated due process.[14] The Fifth Circuit explained that a procedural due process inquiry with respect to sex offender conditions consisted of two elements: (1) whether the complaining party had a liberty interest in not having sex offender conditions imposed on his early release, and (2) if so, whether the State provided constitutionally sufficient procedures be-

---

7. 395 F.3d 216 (5th Cir.2004).

8. *Id.* at 219.

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.*

13. *Id.*

14. *Id.* at 221.

fore imposing the conditions.[15] The court further explained that a liberty interest may arise from two sources: the Due Process Clause itself or state law.[16] The Fifth Circuit concluded that the Due Process Clause itself guarantees a prisoner some process before the State can impose conditions "that are qualitatively different from the punishment characteristically suffered by a person convicted of the crime, and which have stigmatizing consequences."[17] The court characterized restrictions that attend early release as "an established variation on imprisonment of convicted criminals" and found that a condition of early release "may present such a dramatic departure from the basic conditions of a parolee's sentence that the state must provide some procedural protections prior to its imposition."[18]

In addressing whether the sex offender conditions imposed on Coleman were a dramatic departure from the norm, the Fifth Circuit discussed the Supreme Court case of *Vitek v. Jones*,[19] which held that due process requires procedural protections before an inmate may be involuntarily committed to a mental institution.[20] Based upon the combination of stigma and compelled behavior-modification treatment, the Supreme Court held that involuntary commitment to a mental institution implicated a constitutionally protected liberty interest.[21] The Fifth Circuit found the facts of its case to be materially indistinguishable from *Vitek*: sex offender

classification and counseling were stigmatizing, and the sex offender counseling involved intrusive, behavior-modifying techniques.[22] Consequently, the sex offender conditions imposed upon Coleman were "qualitatively different" from the usual conditions that attend an inmate's release.[23] The Fifth Circuit also cited cases from the Ninth and Eleventh Circuits in support of the conclusion that "prisoners who have not been convicted of a sex offense have a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions."[24]

Because the sex offender conditions imposed on Coleman implicated a liberty interest, the State could have legitimately imposed those conditions only if it had determined, after affording Coleman appropriate procedural protections, that Coleman constituted "a threat to society by reason of his lack of sexual control."[25] "Absent a conviction of a sex offense," the Fifth Circuit concluded, the State must afford "an appropriate hearing" at which such a determination can be made.[26]

## B. Authorization to Impose the Condition at All

█ It is undisputed that applicant does not have a "reportable conviction" under the sex offender registration statute, which does not list assault or burglary with intent to commit theft, and lists only

---

15. *Id.*

16. *Id.*

17. *Id.* (internal quotation marks omitted).

18. *Id.* at 222 (internal quotation marks omitted).

19. 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980).

20. *Coleman,* 395 F.3d at 222.

21. *Id.* (citing *Vitek* ).

22. *Id.* at 223.

23. *Id.*

24. *Id.* at 222, 222 n. 26.

25. *Id.* at 225.

26. *Id.*

a second conviction for indecent exposure.[27] Applicant contends that Government Code sections 508.186, 508.187, and 508.225 specifically address when sex offender conditions in general, and child safety zone conditions in particular, may be imposed. Because none of those statutes apply to the offense of indecent exposure, he reasons that the parole panel lacks the authority to impose those conditions in his case. We disagree.

■ Sections 508.186 and 508.187 address situations in which a parole panel must impose certain conditions, but those sections do not constrain the scope of a parole panel's discretionary authority.[28] Section 508.225 authorizes the imposition of a child safety zone condition for an inmate serving a sentence for an offense falling under section 3g of the Code of Criminal Procedure if such a condition is warranted by the nature of the offense.[29] Section 508.225 does not, however, specifically preclude the use of a child safety zone in other circumstances.[30] In contrast, Chapter 508 does contain one instance in which the legislature specifically precluded something from being used as a condition of release: an inmate may not be required to undergo an orchiectomy.[31]

More importantly, section 508.221 confers broad, general authority on a parole panel to impose conditions of parole or mandatory supervision: "A parole panel may impose as a condition of parole or mandatory supervision any condition that a court may impose on a defendant placed on community supervision under article 42.12, Code of Criminal Procedure...."[32] In turn, article 42.12, section 11, provides, "The judge may impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant."[33]

Indecent exposure is a sex offense[34] and a person who commits indecent exposure is specifically identified as a "sex offender" by article 42.12, section 9A,[35] so sex offender conditions would seem "reasonable" under article 42.12, section 11. Moreover, in addition to its general grant of authority, article 42.12, section 11 explicitly permits a judge who grants community supervision to a sex offender identified by section 9A to require the probationer to "submit to treatment, specialized supervision, or rehabilitation according to offense-specific standards of practice adopted by the Council on Sex Offender Treatment."[36] Finally, under article 42.12, section 13B, a child safety zone condition is a requirement of probation for an indecent exposure offense

---

27. *See* Tex.Code Crim. Proc. art. 62.001(5), and more specifically (5)(F).

28. *See* Tex. Gov't Code § 508.186 ("A parole panel shall require as a condition of parole or mandatory supervision that a releasee required to register as a sex offender under Chapter 62, Code of Criminal Procedure" fulfill certain conditions); *id.,* § 508.187(b)("A parole panel shall establish a child safety zone" under certain circumstances with certain conditions).

29. Tex. Gov't Code § 508.225(a).

30. *See id.,* § 508.225, *passim.*

31. *Id.,* § 508.226.

32. *Id.,* § 508.221.

33. Tex.Code Crim. Proc. art. 42.12, § 11(a).

34. *See* the text of Tex. Pen.Code § 21.08 ("intent to arouse or gratify the sexual desire of any person") and the title of Penal Code, Chapter 20 ("Sexual Offenses").

35. Tex.Code Crim. Proc. art. 42.12, § 9A(a)(2)(B).

36. *Id.,* § 11(i).

committed against a child.[37] Given the general authority granted to a parole panel to impose any condition of probation permitted by article 42.12, it would be odd to prohibit the imposition of a child safety zone as a condition of parole for a first-time indecent exposure offense when it would be required as a condition of probation under article 42.12.

■ The dissent contends that § 508.225, by authorizing the discretionary imposition of child safety zones for 3g offenders, impliedly prohibits the discretionary imposition of a child safety zone condition for non–3g offenses under the maxim *expressio unius est exclusio alterius*—expressing one thing implies the exclusion of what was not expressed.[38] For several reasons, we find the dissent's argument to be unpersuasive.

■ First, the maxim expressed by the dissent is not an inflexible rule but is merely an aid in construction.[39] Though it "has had widespread legal application," "it is not a rule of law and there is nothing particularly legal about it."[40] The maxim is "a product of logic and common sense, expressing the learning of common experience that when people say one thing they do not mean something else."[41] In considering the application of a rule of logic and common sense to parole law, courts should also consider the broad discretion the Legislature obviously intended to confer upon the parole authorities to fashion appropriate conditions of parole.

■ Second, the maxim operates only when a comprehensive treatment of the subject matter is intended or when addressing an exception to a general rule.[42] An express grant of authority does not by itself give rise to an inference that matters outside the express grant are prohibited. In *Dallas*, we held that the express grant of authority to impose conditions of bail on appeal in felony cases did not result in an implied prohibition against imposing conditions of bail on appeal in misdemeanor cases.[43] While the entire statute addressing bail pending appeal could be accurately characterized as comprehensive, the provision from which the court of appeals claimed the implied prohibition flowed— addressing bail in felony cases—was not. We explained that the courts had inherent power to impose conditions of bail in both felony and misdemeanor cases, and we

**37.** *Id.*, § 13B(a)(1)(B), (b)(2)("(a) If a judge grants community supervision to a defendant described by Subsection (b) and the judge determines that a child ... was the victim of the offense, the judge shall establish a child safety zone applicable to the defendant .... (b) This section applies to a defendant placed on community supervision for an offense ... (2) under Section 21.08 ... Penal Code.").

**38.** *See* dissent at 928. Although the dissent discusses § 508.197 and article 42.12, § 13B, it acknowledges that those provisions outline the circumstances under which the child safety zone condition is mandatory, rather than discretionary, and it does not appear to be contending that the mandatory provisions can by themselves give rise to an implied prohibition on a parole panel's discretionary authority.

**39.** *Williams v. State*, 965 S.W.2d 506, 507 (Tex.Crim.App.1998).

**40.** *Id.*

**41.** *Id.*

**42.** *Dallas v. State*, 983 S.W.2d 276, 278 (Tex. Crim.App.1998)("if statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded").

**43.** *Id.* at 278–80; *see also* Tex.Code Crim. Proc. art. 44.04(a)(authorizing misdemeanor bail but containing no language specifically authorizing conditions of bail), (c)(providing in felony cases that the court "may impose reasonable conditions on bail pending the finality of [the defendant's] conviction").

held that the express provision for conditions of bail in felony cases did not disturb the courts' long-held inherent authority with regard to misdemeanors.[44]

■ Section 508.221 confers general authority on parole panels to impose conditions of parole. Chapter 508 may in its totality constitute a comprehensive scheme with regard to the imposition of conditions of parole. But, according to the dissent, the implied prohibition against the discretionary imposition of child safety zones flows from the explicit grant of discretionary authority found in § 508.225. That section does not purport to comprehensively regulate parole conditions and is not framed as an exception to a general rule. Under *Dallas*, then, the express grant of authority to impose child safety zones for one class of offenders under § 508.225 does not override a parole panel's general authority to impose a child safety zone condition on other classes of offenders.[45]

■ Third, an express exclusion in the statutory scheme will negate the existence of implied exclusions. In *Fondren v. State*, the defendant was prosecuted for the (now non-existent) crime of abortion.[46] He was prosecuted as an accomplice under the general accomplice statute that existed at the time, article 79.[47] Article 85 speci-

fied that there may be accomplices to all offenses except manslaughter and negligent homicide.[48] A separate statute specific to abortion, article 1072, provided for a theory of accomplice liability with respect to abortion offenses.[49] Despite the abortion-specific provision in article 1072, this Court held that the general parties statute applied to the offense of abortion.[50] Significantly, this Court stated: "If the rule, *expressio unius est exclusio alterius*, applies at all to this statute, it unquestionably is in favor of the construction we give to the several articles, instead of the reverse, for as the statute expressly excepts manslaughter and negligent homicide from the application of article 79, if the Legislature had intended to except abortion it unquestionably would have said so and included that in article 85." [51]

As we have observed, Chapter 508 does contain an express exclusion: orchiectomy is prohibited as a condition of parole or mandatory supervision. This exclusion suggests there are no other exclusions. If the Legislature had intended to prohibit child safety zones except where expressly provided, it could have expressly done so.

Fourth, the parole scheme does contain an express provision authorizing special conditions for sex offenders, including someone in appellant's position, that would

---

**44.** *Dallas*, 983 S.W.2d at 279–80.

**45.** There is a different aspect of Chapter 508 that does satisfy *Dallas* by prescribing an exception to a general rule: the mandatory provisions. The general rule is that the imposition of conditions by a parole panel is *discretionary*. Two statutes within Chapter 508 outline conditions that are mandatory under certain circumstances, creating exceptions to the general rule of discretion. By specifying the circumstances under which conditions are mandatory, the Legislature has impliedly indicated that no other circumstances involve mandatory conditions. The present case, however, involves when a discretionary condition may be imposed.

**46.** 74 Tex.Crim. 552, 169 S.W. 411 (1914).

**47.** *Fondren*, 74 Tex.Crim. at 560, 169 S.W. at 415.

**48.** *Fondren*, 74 Tex.Crim. at 560, 169 S.W. at 415.

**49.** *Fondren*, 74 Tex.Crim. at 560, 169 S.W. at 415.

**50.** *Fondren*, 74 Tex.Crim. at 560, 169 S.W. at 415–16.

**51.** *Id.*

logically include a child safety zone: article 42.12, § 11(i). As explained above, § 508.221 permits the imposition of any condition authorized by article 42.12, and article 42.12, § 11(i) permits a judge who grants probation to a § 9A sex offender to require that the offender "submit to treatment, specialized supervision, or rehabilitation according to offense-specific standards of practice adopted by the Council on Sex Offender Treatment." In a footnote, the dissent says that it is not at all clear that § 11(i) applies to applicant, but the dissent gives no explanation for its conclusion.[52] "Sex offender" is defined by § 9A as "a person who has been convicted or has entered a plea of guilty or nolo contendere" for a listed offense, including indecent exposure,[53] of which applicant has been convicted. Because this definition is to be used in conjunction with presentence investigation reports,[54] it seems clear that "has been convicted" includes prior convictions, and not just the conviction in the case in which the defendant is placed on probation.[55]

The dissent further contends that, even if applicant qualified under § 11(i), "there is no indication that he was ever evaluated under that section at the trial court level."[56] But applicant was evaluated pursuant to an order by the parole panel, so the

dissent's objection seems be that a *trial court* did not order the evaluation. Article 42.12 refers to the trial court because it is the probation statute; at that point in the criminal process, the offender is in the trial court. Even if evaluation is a prerequisite to application of Government Code § 508.221, surely the point is not who orders the evaluation, but simply that the offender be evaluated, as he was in this case.

■ Finally, it is not self-evident to the dissent that imposition of a child safety zone constitutes "treatment, specialized supervision, or rehabilitation."[57] It is evident to us that it does. Under "Issues to Be Addressed in Treatment," the Rules and Regulations Relating to Council on Sex Offender Treatment specify "Effective arousal or impulse control shall include methods to control spontaneous deviant fantasies and to minimize contact with objects or persons within the deviant fantasies."[58]

■ It is worth noting, as well, that article 42.12, §§ 9A and 11(i) were enacted in 2003,[59] after the enactment of § 508.225 (and its article 42.12 counterpart) in 1999.[60] As the later enactment, § 11(i) would override any implied prohibition found in § 508.225.

---

**52.** Dissent at 929 n. 14.

**53.** Tex. Code Crim. Proc. art. 42.12, § 9A(a)(2)(B).

**54.** *Id.*, § 9A(b), (c).

**55.** Indeed, as the dissent notes, the Legislature has elsewhere, in the context of mandatory conditions, expressly limited a condition-of-probation provision's reach to a person who is actually placed on probation for the sex offense. Dissent at 929–30 (citing Tex. Code Crim. Proc. art. 42.12, § 13B(b)).

**56.** Dissent at 929 n. 14 (emphasis added).

**57.** Dissent at 929 n. 14.

**58.** Council on Sex Offender Treatment, *Rules and Regulations Relating to Council on Sex Offender Treatment*, 22 Tex. Admin. Code § 810.68(1), p. 45 (2006). *See also*, § 810.64(d)(20), p. 29 (2006) (regarding possibility of supervised visits with children, client who has history of deviant sexual interest in children should be restricted from having access to children unless certain conditions are present).

**59.** Acts 2003, 78th Leg., ch. 353, §§ 1, 2.

**60.** Acts 1999, 76th Leg., ch. 56, §§ 1, 2.

Applicant contends that *Coleman* shows that sex offender conditions are not "reasonable" under these statutes. But *Coleman* was a construction of the Due Process Clause of the United States Constitution, not of the Texas statute, and *Coleman's* holding was about what process must be afforded to the releasee before sex offender conditions may be imposed, not about whether sex offender conditions may be imposed at all. In fact, *Coleman* contemplated that the imposition of sex offender conditions would be legitimate if the releasee had previously been convicted of a sex offense or if particularized justification for the conditions were developed at an "appropriate hearing" afforded to the releasee. The remaining question (and the one that was at issue in *Coleman*) is whether the parole panel deprived applicant of due process by failing to afford notice and an opportunity to respond.

## C. Notice and Opportunity to Respond

 Assuming *Coleman* articulates the correct rule of law with respect to the due process right to some manner of hearing, we conclude that this due process right was not violated in applicant's case because he was in fact provided with notice and an opportunity to respond. Even when a liberty interest exists in the early release context, due process does not require a live hearing at which the convicted person may be present.[61] Rather, due process requires simply that the convicted person be given timely notice in advance of the parole panel's consideration of the matter and that he be given an opportunity to submit any information that he feels

may be relevant to the parole panel's decision.

Applicant was given notice that he would be considered for sex offender conditions; he did not avail himself of the opportunity to respond. And during the subsequent sex offender evaluation, applicant was allowed to offer explanations with respect to his prior offenses. Applicant complains that he was not given the opportunity to respond to Pierce's sex offender evaluation report. But even in the mandatory supervision context, where we have acknowledged that a liberty interest in early release exists, we have not held that an inmate is entitled to notice of and an opportunity to respond to all the bad evidence the parole panel may have received concerning him.[62]

We deny relief.

PRICE, J., filed a dissenting opinion in which MEYERS, JOHNSON and HOLCOMB, JJ., joined.

COCHRAN, J., filed a concurring opinion in which WOMACK, J., joined.

PRICE, J., filed a dissenting opinion in which MEYERS, JOHNSON and HOLCOMB, JJ., joined.

The applicant was convicted of the offense of burglary of a building for purposes of committing theft. He was eventually released on parole, but was revoked because the parole panel found that he violated a condition of his release by entering a child safety zone. The applicant argues, *inter alia*, that the parole panel lacked the discretion to impose such a condition in his case, under Section 508.225(a) of the Texas Government Code.[1]

---

**61.** *Ex parte Geiken*, 28 S.W.3d 553, 560 (Tex. Crim.App.2000).

**62.** *See id., passim.*

**1.** TEX. GOV'T CODE § 508.225(a). This provision reads:

(a) If the nature of the offense for which an inmate is serving a sentence warrants the establishment of a child safety zone, a

The Court rejects this argument in a single, perfunctory sentence.[2] I believe that the applicant's argument is correct, however, and therefore I respectfully dissent.

In concluding that a child-safety-zone condition may be imposed as a condition of the applicant's parole, the Court points to broad language in Section 508.221 of the Government Code granting a parole panel the authority to "impose as a condition of parole or mandatory supervision any condition that a court may impose on a defendant placed on community supervision under Article 42.12, Code of Criminal Procedure. . . ."[3] Subsection 11(a) of Article 42.12, in turn, grants wide (albeit not wholly unfettered) discretion upon a trial court to "impose any reasonable condition that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant."[4] The Court deems the establishment of a child safety zone to be a reasonable condition of community supervision for one, such as this applicant, who has been previously convicted of indecent exposure, and it therefore holds that a parole panel may also authorize it as a condition of parole, consistent with Section 508.221 of the Government Code.[5]

The Court fails to see the whole picture. It is important to construe all of the conditions-of-parole/mandatory supervision provisions contained in Chapter 508 of the Government Code *in pari materia.* Moreover, in view of Section 508.221's reference to Article 42.12's provisions governing conditions of community supervision, it is also important to construe the Government Code provisions *in pari materia* with provisions in the Code of Criminal Procedure governing conditions of community supervision. Let us begin with the Government Code.

### CHAPTER 508

Chapter 508 of the Government Code pertains generally to parole and mandatory supervision in Texas. Subchapter F designates mandatory conditions—those that a parole panel *must* impose on certain offenders as a condition of their release on parole or mandatory supervision. Among those mandatory conditions is that found in Section 508.187.[6] This provision requires a parole panel to impose as a condition of release the establishment of a child safety zone for inmates "serving a sentence" for certain enumerated offenses. Those enumerated offenses involve of-

---

parole panel may establish a child safety zone applicable to an inmate serving a sentence for an offense listed in Section 3g(a)(1), Article 42.12, Code of Criminal Procedure, or for which a judgment contains an affirmative finding under Section 3g(a)(2), Article 42.12, Code of Criminal Procedure, by requiring as a condition of parole or release to mandatory supervision that the inmate not:

(1) supervise or participate in any program that includes as participants or recipients persons who are 17 years of age or younger and that regularly provides athletic, civic, or cultural activities; or

(2) go in or on, or within a distance specified by the panel of, a premises where children commonly gather, including a school, day-care facility, playground, public or private youth center, public swimming pool, or video arcade facility.

**2.** *See* Majority Opinion at 922 ("Section 508.225 does not, however, specifically precluded the use of a child safety zone in other [than the specifically enumerated] circumstances.")

**3.** *Id., citing* Tex. Gov't Code § 508.221.

**4.** Tex.Code Crim. Proc. art. 42.12, § 11(a); George E. Dix & Robert O. Dawson, 43A Texas Practice: Criminal Practice and Procedure § 39.94 (2d ed.2001).

**5.** Majority opinion at 922–23.

**6.** Tex. Gov't Code § 508.187.

fenses of a sexually assaultive or exploitative nature, and do *not* include burglary of a building for purposes of committing theft—the offense this applicant was convicted of, was "serving a sentence" for, and for which he was later conditionally released. Thus, the parole panel was apparently not *required* to impose a child safety zone as a condition of his parole. But, of course, the question in this case is whether the parole panel was *authorized* to impose a child safety zone as a condition of the applicant's parole.

In 1999, the Legislature enacted Section 508.225.[7] This legislation added a provision to Subchapter G of Chapter 508, which sets out discretionary conditions of parole and mandatory supervision that a parole panel may impose. It authorizes the imposition of a child-safety-zone condition upon non-sex-offender releasees who are serving sentences of a violent nature, namely, offenses designated by Section 3g(a)(1) of Article 42.12 of the Code of Criminal Procedure, or offenses for which an affirmative finding has been made of the use or exhibition of a deadly weapon under Article 42.12, Section 3g(a)(2). This applicant, serving a sentence for burglary of a building for purposes of committing theft, satisfies none of these express statutory criteria.

Does a parole panel nevertheless have discretion to impose a child-safety-zone condition upon this applicant because he has a *prior* conviction for indecent exposure? It seems clear enough that a parole panel is not *required* to impose that condition, since indecent exposure is not among the expressly enumerated offenses in Section 508.187(a). In any event, as noted earlier, under Section 508.187(a), it is the offense for which the releasee is "serving a sentence" that must be among those enumerated, not some prior offense. *Expressio unius est exlusio alterius.*[8] We must presume, absent some plain indicium of contrary legislative intent, that when the Legislature says one thing, it does not mean something else.[9]

This maxim should apply with equal force to Section 508.225(a). By expressly enumerating the circumstances in which a parole panel "may" make parole or mandatory supervision contingent upon the imposition of a child safety zone, the Legislature has presumably indicated that such a condition *may not otherwise* be imposed (except, of course, where mandated by Section 508.187).[10] I find nothing in the legislative history of Section 508.225 (such as it is) to the contrary.[11] Therefore, not-

---

7. Acts 1999, 76th Leg., ch. 56, § 2, eff. Sept. 1, 1999.

8. "A canon of construction holding that to express or include one thing implies the exclusion of the other, or of the alternative." *Black's Law Dictionary* 602 (7th ed.1999). "It is a well-known rule of statutory construction in this State and elsewhere that the express mention or enumeration of one person, thing, consequence or class is tantamount to an express exclusion of all others." *Ex parte McIver*, 586 S.W.2d 851, 856 (Tex.Crim.App. 1979) (Opinion on State's motion for rehearing); *State v. Roberts*, 940 S.W.2d 655, 659 (Tex.Crim.App.1996).

9. *Williams v. State*, 965 S.W.2d 506, 507 (Tex. Crim.App.1998); Norman J. Singer & J.D.

Sambie Singer, 2A Sutherland on Statutes and Statutory Construction § 47:24 (7th ed.2007); 67 Tex. Jur.3d *Statutes* § 116 (2003), at 631–33.

10. *See* Tex. Gov't Code § 508.255(c) ("This section does not apply to an inmate described by Section 508.187.").

11. Senate Bill 660 passed through both the Senate and House and their respective committees with no amendment and very little fanfare. According to the various bill analyses, its purpose was to "create[ ] certain conditions for community supervision, parole, and mandatory supervision for certain violent offenders." Apparently, the Legislature did not believe that the discretionary imposition

withstanding the general authority granted to a parole panel by Section 508.221 to impose any condition that could be imposed upon a probationer under Article 42.12, I would hold that a parole panel may *not* impose a child-safety-zone condition upon an inmate serving a sentence that does not fall under Article 42.12, Section 3g(a)(1), or for which an affirmative finding was not made under Article 42.12, Section 3g(a)(2).

## ARTICLE 42.12

Even if I were to entertain the Court's assumption that Section 508.221's general grant of authority could trump what I take to be Section 508.225's specific limitation on that authority, I would still hold that the parole panel lacked authority to impose a child-safety-zone condition upon this applicant. Section 508.221 generally authorizes a parole panel to impose any condition that a trial court could impose upon a defendant as a condition of community supervision under Article 42.12. The Court points to general language in Article 42.12, Section 11(a) for the proposition that a trial court is authorized to impose any "reasonable condition" of community supervision,[12] and concludes that it would be

reasonable for a trial court to impose a child-safety-zone condition upon a probationer who has a prior conviction for indecent exposure when offense reports indicate that the indecent exposure involved children.[13] Moreover, the Court notes, Article 42.12, Section 11(i) authorizes a trial court to require a "sex offender" "to submit to treatment, specialized supervision, or rehabilitation according to offense-specific standards of practice adopted by the Council on Sex Offender Treatment."[14] The Court reasons that these provisions in Article 42.12 would have authorized a trial court placing this applicant on community supervision to impose a child-safety-zone condition.[15] I disagree.

Like Chapter 508 of the Government Code, Article 42.12 contains specific provisions that address the imposition of child-safety-zone conditions. In Article 42.12, Section 13B,[16] the Legislature has provided for the mandatory imposition of a child-safety-zone condition of community supervision. Section 13B(b) essentially mirrors Section 508.187(a) of the Government Code, requiring the imposition of a child-safety-zone condition for the nearly identical offenses for which Section 508.187(a) would require a parole panel to impose

of a child-safety-zone condition was already authorized by statute. "When what is expressed in a statute is creative, and not in a proceeding according to the course of the common law, it is exclusive, and the power exists only to the extent plainly granted." Singer & Singer, *supra*, § 47:23, at 412.

12. Tex.Code Crim. Proc. art. 42.12, § 11(a).

13. Majority opinion at 922.

14. *Id.* at 923. *See* Tex.Code Crim. Proc. art. 42.12, § 11(i) ("A judge who grants community supervision to a sex offender evaluated under Section 9A may require the sex offender as a condition of community supervision to submit to treatment, specialized supervision, or rehabilitation according to offense-specific

standards of practice adopted by the Council on Sex Offender Treatment."). It is not at all clear to me that the applicant would necessarily qualify as a "sex offender" under Tex.Code Crim. Proc. Article 42.12, § 9A(a)(2). But even if he did, there is no indication that he was ever "evaluated" under that section at the trial court level, and so I cannot conclude that Section 11(i) would authorize imposing offense-specific "treatment, specialized supervision, or rehabilitation" upon him as a condition of community supervision. Nor is it self-evident to me that imposition of a child safety zone constitutes "treatment, specialized supervision, or rehabilitation."

15. *Id.* at 922–23.

16. Tex.Code Crim. Proc. art. 42.12, § 13B.

such a condition. But Section 13B(b), by its express terms, applies only "to a defendant placed on community supervision for" one of these enumerated offenses—not including burglary of a building for purposes of committing theft. Had this applicant been placed on community supervision for his offense of burglary of a building, a trial court could not have been *required* under Section 13B to impose a child-safety-zone condition. Again, *expressio unius est exclusio alterius.*

Also like Chapter 508 of the Government Code, Article 42.12 contains a specific provision governing when a trial court is *authorized* to impose a child safety zone as a condition of community supervision. Section 13D of Article 42.12 provides that a trial court "may" impose such a condition if it "grants community supervision to a defendant convicted of an offense listed in Section 3g(a)(1) or for which the judgment contains an affirmative finding under Section 3g(a)(2)[.]" [17] These are exactly the same circumstances under which a parole panel is authorized to impose a child safety zone as a condition of parole or mandatory supervision under Section 508.225—indeed, Section 13D and Section 508.225 were en-

acted at the same time, in the same legislative bill.[18] Once again, by enumerating the circumstances under which this condition of community supervision may be imposed, the Legislature has indicated that it may *not* be imposed otherwise (except, of course, where mandated under Section 13B).[19] Because the applicant could not have been subjected to a child-safety-zone condition of community supervision under Article 42.12, such a condition could not lawfully be imposed upon him as a condition of parole by virtue of Section 508.221 of the Government Code.

The applicant's parole should not have been revoked on the basis of a condition of release that was unlawfully imposed upon him. I respectfully dissent.

COCHRAN, J., filed a concurring opinion in which WOMACK, J., joined.

I join in the denial of relief to this habeas corpus applicant because he was given at least a minimal due-process opportunity to contest the appropriateness of imposing "Special Condition 'X' (Sex Offender Condition)"[1] upon him as a condi-

---

**17.** Tex.Code Crim. Proc. art. 42.12, § 13D(a) reads:

(a) If a judge grants community supervision to a defendant convicted of an offense listed in Section 3g(a)(1) or for which the judgment contains an affirmative finding under Section 3g(a)(2), the judge, if the nature of the offense for which the defendant is convicted warrants the establishment of a child safety zone, may establish a child safety zone applicable to the defendant by requiring as a condition of community supervision that the defendant not:

(1) supervise or participate in any program that includes as participants or recipients persons who are 17 years of age or younger and that regularly provides athletic, civic, or cultural activities; or

(2) go in or on, or within a distance specified by the judge of, a premises where children commonly gather, including a

school, day-care facility, playground, public or private youth center, public swimming pool, or video arcade facility.

**18.** Acts 1999, 76th Leg., ch. 56, § 1, eff. Sept. 1, 1999.

**19.** *See* Tex.Code Crim. Proc. art. 42.12, § 13B(c) ("This section does not apply to a defendant described by Section 13B.").

**1.** A copy of the Texas Board of Pardons and Paroles sheet outlining "Special Condition 'X'" is included in TDCJ's amicus brief. Those conditions include (1) the mandatory enrollment in a sex offender treatment program; (2) a prohibition against entering any sexually oriented business or any business that provides "adult entertainment"; (3) a prohibition against communicating with the victim of the sexual offense or going near

tion of his release on parole. One might reasonably question the wisdom of the parole board's decision in this matter, but it did not violate the Due Process Clause of the federal constitution.

Seventeen years before his current release on parole in 2006, applicant pled guilty to the Class B misdemeanor of indecent exposure. Twenty-two years before his release on parole, applicant pled guilty to misdemeanor assault. The factual allegations set out in the original police offense reports from these remote misdemeanor convictions are what led the parole board to consider the imposition of Special Condition X. Those allegations have never been tested in a court for their accuracy, and applicant was not convicted of the specific offenses originally filed against him.

The written notice given to applicant by the parole division stated its reasons for considering the imposition of sex-offender conditions:

Arrest for Attempted Sexual Assault–Plead to Misdemeanor Assault (Allegedly tried to rape an adult white female).[2]

that person's business, home, or school; (4) a prohibition against participating in any volunteer activities without the prior written approval of the parolee's supervising officer; (5) a prohibition against attending any institution of higher learning without prior parole board approval; (6) a prohibition against the purchase, possession, or viewing of any magazines, literature, or visual media that depict sexually explicit images; and (7) the submission to polygraph examinations. For those whose victims were under 17 years of age, the conditions also include (1) a prohibition against any unsupervised contact with any child under 17 in person, by telephone, or by any electronic means unless the parolee is the child's parent; (2) a prohibition against forming any relationship (dating, marriage, or platonic) with any person who has children under 17 without written approval by the parolee's supervising officer; (3) a prohibition against participating or attending any athletic, civic, or cultural program if the participants include children under 17; and (4) a prohibition against going "in, on, or within a distance specified by board policy of a premise where children commonly gather, including a school, day care facility, playground, public or private youth center, public swimming pool, or video arcade facility." Additional conditions that a parole officer may, in his discretion, impose include (1) a prohibition against leaving the approved county without written permission; (2) a prohibition against owning or operating computer equipment without written authorization, but if such authorization is given, submission to a warrantless search of all such equipment "at any time, day or night, by any TDCJ parole or law enforcement official"; (3) a prohibition against owning or operating photographic equipment without written approval; (4) the notification of any prospective employer of the parolee's criminal history; (5) a written curfew requirement; and (6) the submission to searches of the parolee's person, car, home, or any other property at any time, day or night, without a warrant by the parole officer.

2. The 1984 police offense report stated that applicant entered the apartment of a sixty-year-old woman and that he grabbed her and moved his hand in between her legs. The report stated that she screamed, and applicant ran away and hid under the bed in her bedroom where the police officer found him. It would appear that there might have been problems with this case as the charges were reduced to simple misdemeanor assault. Applicant gave the sex offender psychologist the following explanation of that event: "When I was 18–years–old, I was drunk and I intended to break into a house. At first, they got me for sexual assault, but dropped it to attempted. What happened was the lady in the house started screaming when she saw me. She was an older lady and there was no sex." When the psychologist asked him whether he had attempted to engage in sexual activity with the woman, applicant said, "I don't think so; I was drunk." The psychologist concluded that applicant was in need of sexual-offense-specific treatment, in part because he "does not accept responsibility for the attempted sexual assault, and he did not deny that he attempted to rape the adult female (he reported being unable to recall due to alcohol)."

Arrest for Indecency With a Child–Plead to Public Lewdness [sic] (Allegedly exposed penis to persons who were 17 years of age or younger at a public park. Offender claims to have been urinating).[3] Awaiting Sex Offender assessment prior to release from TDCJ–ID.

Applicant was told that he could submit a written statement and other documentation within thirty days to explain why the sex-offender conditions should not be imposed. He did not do so. The parole board then ordered that applicant submit to a sex-offender evaluation by a psychologist. He did so, and he explained his version of the events underlying the two previous misdemeanor convictions. The psychologist assumed that all of the facts within the original police offense reports were true, and therefore concluded that applicant was in denial of his likelihood to commit future sexual offenses. The psychologist's report stated,

> Based on the fact that he reported being unable to recall whether he did in fact attempt to rape the adult female, and that he denied intentionally exposing his penis to the children, a specific issue polygraph examination is also recommended in order to assist in [applicant's] treatment planning.

The record does not reveal whether applicant was ever given a copy of the psychologist's report. Applicant was not given a second opportunity to be heard before the parole panel voted to impose Special Condition X, including a child-safety zone, on him.

A month and a half after these sex-offender conditions were imposed, applicant candidly told his parole officer that he had been going to his father's home to take a shower every afternoon because the "sponsor house" where he lived did not have hot water. Unfortunately, applicant's father's house is located within 500 feet of a child-care facility.[4] That was why applicant had to move out of his family's house into a "sponsor house." Thus, it was undisputed that applicant knew that it was *verboten* to visit his father's home, even to take a hot shower. Although applicant worked successfully at a full-time job, had avoided drugs and alcohol, and was doing well on supervision, his parole was revoked, and he was returned to prison.

As the Court correctly notes, a conviction for the Class B misdemeanor of indecent exposure is a "sex" offense because (1) it is listed in Chapter 21 of the Penal Code entitled "Sexual Offenses," and (2) it involves an intent "to arouse or gratify the sexual desire" of someone. A seventeen-year-old conviction for Indecent Exposure might not appear to be the sort of dangerous sex crime that the Texas Legislature had in mind when it enacted the stringent sex-offender registration and treatment statutes, but it does fit within a literal application of the law.

Nonetheless, the Parole Division wisely erred on the side of discretion and did not automatically impose Special Condition X

---

**3.** According to the 1989 offense report, three young girls and a young boy saw applicant walk up to them in the front yard and unzip his pants. The children said that applicant pulled out his penis, moved it around in his hand, and said, "Hey, look, girl." The responding officer said that applicant was drunk at the time. Applicant told the sex-offender psychologist, "I was taking a leak in an area where there were kids. They dropped it to public lewdness." He denied intentionally exposing himself to the children or anyone else.

**4.** Applicant's uncle, a retired school superintendent, told the parole officer that applicant went to his father's home between 5:30 and 6:30 each evening. He said that everyone except the custodian had left the child-care facility by then.

on applicant.[5] Instead, it provided him with advance notice of its reasons for considering imposition of the sex-offender special conditions and an opportunity to provide written documentation as to why those conditions should not be imposed. It also gave him an opportunity to explain, during a personal interview, to the parole board's forensic psychologist why those conditions should not be imposed. Applicant did not have any further recourse or forum in which to dispute the psychologist's report (if he was even given a copy of that report), but at least he had had some small, informal opportunity to present his side of the story.[6]

Once Special Condition X was imposed, it is not surprising that applicant would fail to abide by every one of its intrusive conditions and prohibitions. Taking hot showers at his father's home, which happened to be located near a child-care facility, is not the sort of violation that would necessarily call for returning a parolee to a high-cost prison.[7] However, the parole board's action was authorized by law. I therefore agree that applicant has not proven that he is entitled to relief on his claim.

---

**5.** Because applicant had been previously convicted of "a" sex crime, although not a "reportable" sex offense, it is uncertain whether the procedural due-process protections mandated by the Fifth Circuit in *Coleman v. Dretke*, 395 F.3d 216 (5th Cir.2004), are required in this instance.

**6.** In *Coleman*, the Fifth Circuit did not elaborate on precisely what type of notice and hearing would suffice to support the parole board's finding that a parolee would "constitute a threat to society by reason of his lack of sexual control." 395 F.3d at 225.

**7.** In Texas, the average cost per day to imprison an inmate in 2006 was $42.54; the average cost per day to maintain a parolee was $3.51, with an additional cost of $323.69 per year for treatment in the Special Needs Sex Offender Program. Legislative Budget Board, Criminal Justice Uniform Cost Report Fiscal Years 2004–2006 3, 6, 10 (2007).